# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2492
_____

Daniel Thomas Robbins

*Plaintiff - Appellant*

v.

City of Des Moines; Brad Youngblut, Des Moines Police Detective; Joseph Leo,
Des Moines Police Lieutenant; Christopher Curtis, Des Moines Police Sergeant

*Defendants - Appellees*

------------------------------

American Civil Liberties Union of Iowa Foundation

*Amicus on Behalf of Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: September 23, 2020
Filed: January 5, 2021
_____

Before LOKEN, SHEPHERD, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Daniel Robbins was recording illegally parked vehicles from a public sidewalk adjacent to the Des Moines Police Station when officers approached him and asked him what he was doing. Robbins was uncooperative, and the officers temporarily seized him and his camera and cell phone. Robbins sued the City of Des Moines (the "City") and three of its officers ("defendant officers") in their individual and official capacities (collectively, "defendants") under 42 U.S.C. § 1983, alleging violations of his First, Fourth, and Fourteenth Amendment rights. The district court granted summary judgment in favor of the defendants on all claims. Robbins appeals. We affirm in part and reverse in part.

## I. BACKGROUND

During the mid-morning hours of May 10, 2018, defendant Detective Brad Youngblut left the police station to get into his car. While walking towards his car, Detective Youngblut observed Robbins recording vehicles as well as officers and civilian employees entering and leaving the police station. Because he was aware that vehicles had recently been stolen from and vandalized in that area, and because he was aware of a previous incident in which two officers had been murdered by a person with a history of filming the police, Detective Youngblut approached Robbins to make inquiry. At about the same time, defendants Lieutenant Joseph Leo and Sergeant Christopher Curtis, along with several other officers, approached Robbins as well. At this point, Robbins was on the sidewalk surrounded by law enforcement officers.

Robbins refused to identify himself or respond to law enforcement inquiries, explaining "I'm taking pictures because it's perfectly legal for me to do so." Lieutenant Leo initiated physical contact when he lifted the back of Robbins's shirt, grabbed his forearm and placed it above his head, and patted him down. Robbins repeatedly asked what about his conduct was illegal, and the officers responded that while he was not doing anything illegal, he was suspicious. Eventually, the officers

ordered Robbins to leave, and he refused. The officers then told Robbins he was loitering, and, if he did not identify himself, he would be arrested. Detective Youngblut suggested that the officers "just make a suspicious activity case . . . [and] confiscate the camera until we have a reason for what we're doing."

At this point, Robbins asked, "Do I have an arrest?" and Detective Youngblut said, "Yes." Robbins asked, "Am I detained at this point?" and Detective Youngblut responded, "Yes, you are now at this point." While officers put Robbins's hands on the bed of a pickup and patted him down, they again asked for identification, which he said he did not have. When asked his name, Robbins responded with "John Doe" before providing his name under protest.

The officers seized Robbins's cell phone and camera. Detective Youngblut photographed Robbins for his file and then told him that he was free to go. The encounter lasted approximately twelve minutes. The cell phone and camera were retained by law enforcement until May 22, 2018, when Detective Youngblut authorized the return of the property after Robbins's counsel demanded the return of the property.

Robbins filed suit on September 5, 2018, asserting three constitutional torts: In Count I, Robbins asserts that he was unlawfully detained, seized and searched, and his property was unlawfully seized in retaliation for engaging in protected First Amendment activity – that is, observing and recording public police activities. In Count II, Robbins claims that he was falsely detained, arrested, and his property was unlawfully seized in contravention of the Fourth Amendment. In Count III, Robbins maintains that the City failed to train officers on the First Amendment right to observe and record public police activities causing him to suffer an unlawful retaliatory detention, seizure, and search. The district court granted summary

judgment in favor of the defendants on the first two counts on the basis of qualified immunity and on the third count because Robbins failed to show a constitutional violation or a "policy of inaction."

## II.     DISCUSSION

We consider Counts I and II first.[1]  "We review *de novo* the district court's grant of summary judgment based on qualified immunity." Duffie v. City of Lincoln, 834 F.3d 877, 881 (8th Cir. 2016) (quoting LaCross v. City of Duluth, 713 F.3d 1155, 1157 (8th Cir. 2013)).  We "view[] the record in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011).

Government officials are entitled to qualified immunity unless their conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known.  Gilmore v. City of Minneapolis, 837 F.3d 827, 832 (8th Cir. 2016).  To overcome a claim of qualified immunity, Robbins must demonstrate (1) a deprivation of a constitutional right, and (2) that the right was clearly established at the time of the deprivation. Id.  We may address either inquiry first. See Duffie, 834 F.3d at 882.

---

[1]Robbins asserts Counts I and II against all the defendants.  Claims against the defendant officers in their official capacities are equivalent to claims against the entity for which they work, that is, the City. See Hafer v. Melo, 502 U.S. 21, 25 (1991).  Such claims are only viable if they meet muster under Monell v. Dep't of Social Services, 436 U.S. 658 (1978), as Robbins has alleged in Count III, but not on these counts.  Accordingly, as a threshold matter, we affirm the district court's grant of summary judgment on Counts I and II as to the defendant officers in their official capacities and the City.

## A.      Count I:  First Amendment Retaliation

Because Robbins has not shown a deprivation of a clearly established right, the defendant officers are entitled to qualified immunity.  See Gilmore, 837 F.3d at 832.

Robbins asserts the defendant officers reasonably should have known that the First Amendment protected his recording activity, verbal challenge of the police, and refusal to leave a public place.  Assuming Robbins had a constitutionally protected right to record as he was doing in this case, that right is not absolute.  Fields v. City of Philadelphia, 862 F.3d 353, 360 (3d Cir. 2017) (recognizing the right to record police may be subject to "reasonable time, place, and manner restrictions"); Chestnut v. Wallace, 947 F.3d 1085, 1096 (8th Cir. 2020) (Gruender, J., dissenting) (noting in the context of a citizen's right to watch and record the police that "the fact that a certain right exists does not mean it is without limits, nor does it necessarily indicate that it is obvious how that right applies to a certain set of facts").

Here, law enforcement officers observed Robbins recording both vehicles near the police station and officers and civilian employees entering and leaving the police station.  The officers also possessed other significant information: they were aware of recent criminal activity involving cars parked in the area, and they were aware of a previous filming and stalking incident that escalated into the murder of two officers. Armed with this knowledge, Officer Youngblut approached Robbins and asked him what he was doing. Robbins was non-responsive, evasive, and confrontational. Officer Youngblut reasonably found Robbins's behavior suspicious.

Robbins' behavior that went beyond any constitutionally protected recording activity when combined with the officers' knowledge about vehicles being stolen and vandalized in the area and the previous filming that led to officers being murdered could cause an objectively reasonable person in the officers' position to suspect Robbins was up to more than simply recording the police.   Under these

-5-

circumstances, we can neither say that the officers' conduct was objectively unreasonable under clearly established law, nor in violation of the First Amendment.

Robbins's remaining arguments are too generalized to show a violation of a clearly established right.  See Mullenix v. Luna, 577 U.S. 7, 12 (2015).  While the First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers," City of Houston v. Hill, 482 U.S. 451, 461 (1987), Robbins cannot rely on broad general allegations to show a deprivation of a clearly established right, see Littrell v. Franklin, 388 F.3d 578, 583 (8th Cir. 2004).  The defendant officers are entitled to qualified immunity on the Count I claims.

## B.     Count II:  The Fourth Amendment

On Count II, the district court concluded summary judgment was appropriate because "the officers had probable cause for the stop under the Fourth Amendment" and properly "seized [Robbins's] camera [and cell phone] under reasonable suspicion of criminal activity."  We disagree.  Robbins argues the defendant officers violated his right to be free from (1) a Terry[2] stop unsupported by reasonable suspicion, (2) an arrest absent probable cause, and (3) seizure of his property without a warrant.  We consider each assertion in turn.

### 1.     The Stop

The defendant officers argue that Robbins was subjected to an investigatory stop.  An investigatory stop is Fourth Amendment activity and must be based on a reasonable suspicion "that criminal activity may be afoot."  United States v. Ameling, 328 F.3d 443, 447 (8th Cir. 2003) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).  We assess reasonable suspicion using the totality of the circumstances

---

[2]Terry v. Ohio, 392 U.S. 1 (1968).

approach, which requires "at least 'some minimal level of objective justification.'" De La Rosa, 852 F.3d at 744 (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). "The inquiry deals with probabilities, not hard certainties, and it need not rule out innocent conduct." Chestnut, 947 F.3d at 1088 (citations omitted). An officer will not be deprived of qualified immunity if he had arguable reasonable suspicion, which exists when a reasonable officer in the same position could have believed that reasonable suspicion existed. Waters v. Madson, 921 F.3d 725, 736 (8th Cir. 2019).

The defendant officers are entitled to qualified immunity for the Terry stop because they had at least arguable reasonable suspicion. Detective Youngblut asserted Robbins's recording activity was suspicious because (1) several vehicles had been stolen from and vandalized in that area; (2) it appeared Robbins was monitoring officers and their vehicles; (3) Detective Youngblut previously investigated the murders of two officers by a suspect with a history of filming the police and their movements; and (4) Robbins was evasive and uncooperative. These are "specific, articulable facts" that, under the totality of the circumstances, would lead a reasonable officer to believe he had reasonable suspicion for the investigatory stop. Waters, 921 F.3d at 737; see also United States v. Williams, 929 F.3d 539, 545 (8th Cir. 2019) (considering evasiveness as a factor for reasonable suspicion); Turner v. Lieutenant Driver, 848 F.3d 678, 691–92 (5th Cir. 2017) (finding arguable reasonable suspicion where a suspect was recording the comings and goings from a police station).

### 2. *The Arrest*

We next consider whether the stop progressed to an arrest. The defendant officers assert, without meaningful analysis, that Robbins was never arrested. The record reflects that the officers told Robbins he was arrested after he had been detained and frisked, and the officers seized his property. The question is whether the arrest was supported by probable cause.

-7-

A warrantless arrest that lacks probable cause violates the Fourth Amendment. Small v. McCrystal, 708 F.3d 997, 1003 (8th Cir. 2013). Probable cause for "a warrantless arrest exists 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" Ulrich v. Pope Cnty., 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting Borgman v. Kedley, 646 F.3d 518, 523 (8th Cir. 2011)). Officers are nonetheless entitled to qualified immunity if there is "arguable probable cause," which exists when "an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" Id. (quoting Borgman, 646 F.3d at 523).

At most, the officers at the scene asserted two possible theories for probable cause. First, they suggested that Robbins was loitering.[3] Sections 70-38 and 70-39 of the Des Moines Municipal Code, respectively, prohibit (1) collecting on a sidewalk "to the hindrance or obstruction to free passage of any person passing on or along any sidewalk or street in the city" and (2) loitering "in front of or around . . . public building[s] . . . so as to obstruct, hinder, prevent or disrupt the normal functions carried on therein . . . [or] persons passing by or into or out of the . . . public building." Viewing the facts in a light most favorable to Robbins, a reasonable officer would not have believed he had probable cause to arrest Robbins for loitering because there is no evidence Robbins was blocking the sidewalk or disrupting the activity of the police station.

The officers also asserted that Robbins reported a false name, John Doe, in violation of Iowa's false-reporting statute. See Iowa Code § 718.6. While we have some doubt that claiming to be "John Doe" is a false report under Iowa law, see State

---

[3]The defendants also suggest that they were concerned Robbins might either be stalking personnel or preparing to vandalize or steal cars. But they conceded at oral argument that they have not argued they had arguable probable cause to arrest Robbins on those grounds.

v. Bynum, 937 N.W.2d 319, 325 (Iowa 2020) (citations omitted) (finding a person must take "affirmative steps" to report false information), it is indisputable that the officers could not have relied on the report at the time the arrest was effectuated because Robbins did not say his name was "John Doe" until *after* he was arrested. That cannot support arguable probable cause at the time of Robbins's arrest. The defendant officers are not entitled to summary judgment based on qualified immunity on Robbins's claim of false arrest.

### 3. *The Property*

The Fourth Amendment specifically protects the rights of individuals to be free from unreasonable seizures of their papers and effects. See U.S. Const. amend. IV. A "seizure" occurs "when there is some meaningful interference with an individual's possessory interests in that property." Hansen v. Black, 872 F.3d 554, 558 (8th Cir. 2017) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)). The parties agree that Robbins's property was seized but not searched. The warrantless seizure of property is per se unreasonable unless it falls within a well-defined exception to the warrant requirement. See Dixon v. Lowery, 302 F.3d 857, 862 (8th Cir. 2002).

The defendant officers argue that the seizure of Robbins's cell phone and camera fall within a narrow exception to the general rule that the Supreme Court articulated in United States v. Place, 462 U.S. 696 (1983). In Place, the Supreme Court held "brief detentions of personal effects may be so minimally intrusive of Fourth Amendment interests that strong countervailing governmental interests will justify a seizure based only on specific articulable facts that the property contains contraband or evidence of a crime." Id. at 706. The Supreme Court concluded that a ninety-minute detention of a suspect's luggage based only on reasonable suspicion was unreasonable. Id. at 707–10. Regardless of whether the Place exception applies to personal effects such as cell phones and cameras, the duration of the seizure –

twelve days – was unreasonable.  See United States v. Babcock, 924 F.3d 1180, 1190–91 (11th Cir. 2019) (finding a two-day seizure of a cell phone unreasonable and "in a different bucket than the on-the-spot inquiry hypothesized in *Place*"); Farm Lab. Org. Comm. v. Ohio State Highway Patrol, 308 F.3d 523, 546–47 (6th Cir. 2002) (finding a four-day seizure of green cards unreasonable).

In addition, the officers did not tell Robbins with any precision when or how he would get his property back.  Rather, Detective Youngblut told Robbins he was investigating a homicide and would apply for a search warrant "at some point."  See Place, 462 U.S. at 710 (finding a similar failure exacerbated the constitutional violation); see also Bennett v. City of Eastpointe, 410 F.3d 810, 826–27 (6th Cir. 2005) (highlighting lack of diligence and investigative need in finding a seizure of bicycles unreasonable).  Detective Youngblut disposed of his suspicions and the need for a search warrant after discovering Robbins had a YouTube page dedicated to illegally-parked vehicles.  Even so, Detective Youngblut continued to detain Robbins's property until his counsel demanded its return.

Unlike in Place, Robbins's property was transported to another location rather than subjected to an on-the-spot inquiry.  See Place, 462 U.S. at 705–06.  The Supreme Court has emphasized that "[c]ell phones differ in both a quantitative and a qualitative sense from other objects" due to the volume of personal information they store.  Riley v. California, 573 U.S. 373, 393 (2014).  Given the nature and prevalence of cell phones in our society, we agree with the Eleventh Circuit that "it's no stretch to hazard that a modern-day traveler would likely rather arrive in a strange place without her luggage than without her phone."  Babcock, 924 F.3d at 1191.

Under the facts of this case, the governmental interest, presumably to dispel whatever suspicion the officers had about Robbins, does not outweigh the intrusion to Robbins. The seizure was unreasonable in the absence of arguable probable cause. See Place, 462 U.S. at 707–10.

The defendants alternatively argue that Robbins's uncooperativeness gave them probable cause to seize his property. This argument fails for the reasons stated above. The defendant officers violated Robbins's clearly established right to be free of unreasonable seizures of his property, see id., and are not entitled to qualified immunity.

## C.    Count III:  The Monell Claim

Finally, we consider Robbins's Monell claim against the City. It is well established that a municipality cannot be liable under § 1983 under "a *respondeat superior* theory, that is, solely because it employs a tortfeasor." Atkinson v. City of Mountain View, 709 F.3d 1201, 1214 (8th Cir. 2013) (quoting Szabla v. City of Brooklyn Park, 486 F.3d 385, 389 (8th Cir. 2007) (en banc)). A municipality may only be liable for a constitutional violation resulting from (1) an official municipal policy; (2) an unofficial custom, or (3) failure to train or supervise. See id. Here, Robbins relies on the third prong, alleging the City failed to properly train its officers regarding his First Amendment right to stand in a public forum and record police officers discharging their public duties.

It is difficult to establish a municipality's culpability based on failure to train, which must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Connick v. Thompson, 563 U.S. 51, 61 (2011) (alterations in original) (quoting Canton v. Harris, 489 U.S. 378, 388 (1989)). Deliberate indifference requires proof the municipality disregarded a known or obvious consequence of its action or inaction. Id. The evidence on this record is insufficient to establish deliberate indifference. Thus, no cognizable Monell claim exists.

## III.    CONCLUSION

For the foregoing reasons we affirm in part and reverse in part and remand for further proceedings consistent with this opinion.  We affirm the district court's grant of summary judgment in favor of the defendants on Counts I and III.  On Count II, we affirm the district court on all claims against the defendant officers in their official capacities and the City.  We further affirm the district court's finding that the defendants were entitled to summary judgment on Robbins's claim that he was subjected to an improper <u>Terry</u> stop.  We reverse, however, the district court's grant of summary judgment in favor of the defendant officers in their individual capacities on Robbins's false-arrest claim and his claim for the unlawful seizure of his property.

_____