# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-1333

_____

United States of America

*Plaintiff - Appellee*

v.

Otis Ray Mays, Jr.

*Defendant - Appellant*

_____

No. 20-1359

_____

United States of America

*Plaintiff - Appellee*

v.

Otis Ray Mays, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: December 18, 2020
Filed: April 6, 2021

_____

Before GRUENDER, ERICKSON, and KOBES, Circuit Judges.
_____

GRUENDER, Circuit Judge.

In this appeal, Otis Ray Mays, Jr. challenges the district court's denial of his motion to suppress, argues the district court procedurally erred in sentencing him to 132 months' imprisonment, and contends the district court abused its discretion in imposing several special conditions of supervised release. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

**I.**

In May 2017, Mays (who is not an attorney) approached a married couple at the Hennepin County, Minnesota courthouse, told them he was a lawyer named Chris Harrison, and offered to assist them with some legal issues they were having. They hired him, and Mays subsequently defrauded them out of more than $300,000. The couple eventually discovered the fraud and reported Mays to law enforcement. Thereafter, in September 2017, the Bloomington, Minnesota Police Department and the Federal Bureau of Investigation ("FBI") commenced a joint investigation into Mays's alleged fraud. Later in 2017, the FBI and the Richfield, Minnesota Police Department began a joint investigation into allegations that Mays was involved in a juvenile sex-trafficking ring.

On July 23, 2018, Mays's uncle, Bernard Holmes, met with an FBI agent and a Bloomington Police Department detective who were working on the fraud investigation. Holmes told these investigators that he had heard from more than one person that Mays had defrauded them by pretending to be an attorney, explaining that Mays frequently would "run[] through the courthouse . . . playing around like he's Perry Mason." Holmes also told the investigators that Mays "always" had his laptop with him, including when he went to court, and that Mays constantly used it. Holmes then told investigators that he had taken Mays's laptop without Mays's

permission in April 2018 and still had it in his possession. Holmes also informed them that he had accessed the laptop and found on it a file labeled "Evidence" as well as video recordings of Mays having sex with various women.

Holmes then mentioned how Mays (who was in jail when Holmes took the laptop but had been released soon thereafter) was "gung ho" about recovering the laptop and recently had been trying to reclaim it from Holmes,[1] possibly going so far as having someone impersonate a police officer, call Holmes, and leave him threatening voicemails about returning the laptop. One of the investigators told Holmes that the investigators wanted to obtain the laptop, and Holmes responded that he had it at his current residence and that they could come retrieve it. After the interview ended, the investigators followed Holmes to his residence, and Holmes gave them Mays's laptop. They did not have a warrant.

Fifteen days later, an FBI agent working on the sex-trafficking investigation applied for a search warrant for the laptop, including in the supporting affidavit extensive details learned about Mays during the joint investigations. A federal magistrate judge issued a search warrant that same day. Investigators then discovered what they believed to be child pornography on the laptop, which later was confirmed to be video recordings of Mays engaged in sexual activity with a then-seventeen-year-old girl.

Subsequently, in two separate indictments, a federal grand jury charged Mays with nine counts of producing child pornography, 18 U.S.C. § 2251(a), (e), one count of receiving child pornography, 18 U.S.C. § 2252(a)(2), (b)(1), and three counts of wire fraud, 18 U.S.C. § 1343. Mays moved to suppress the video recordings discovered on his laptop, arguing that they were the fruit of an illegal warrantless seizure. The district court denied this motion.

---

[1]Mays did not learn that Holmes had taken his laptop until July 9, 2018.

Mays then entered into a plea agreement, in which he agreed to plead guilty conditionally to one count of receiving child pornography and to plead guilty unconditionally to one count of wire fraud. *See* Fed. R. Crim. P. 11(a)(2). Mays reserved the right to appeal the denial of his motion to suppress as well as the right to appeal his sentence if it exceeded 120 months' imprisonment. The district court later sentenced Mays to 132 months' imprisonment on each count (to be served concurrently), and it imposed 10 years' supervised release on the child-pornography count as well as 3 years' supervised release on the wire-fraud count (to be served concurrently). Additionally, the district court imposed a number of special conditions of supervised release.

Mays appeals, challenging the denial of his motion to suppress, his sentence of imprisonment, and four special conditions of supervised release.

**II.**

Mays first argues that the district court erred in denying his motion to suppress the evidence obtained from his laptop. In reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its ultimate conclusion whether the Fourth Amendment was violated *de novo*. *United States v. Holly*, 983 F.3d 361, 363 (8th Cir. 2020). "We may affirm the district court's denial of a motion to suppress on any ground supported by the record." *United States v. LaGrange*, 981 F.3d 1119, 1121 (8th Cir. 2020).

A.

Mays primarily argues that the investigators' acquisition of his laptop from Holmes constituted an unreasonable seizure under the Fourth Amendment. The district court rejected this argument, reasoning that the investigators' actions did not constitute a Fourth Amendment seizure. We need not address this rationale because we agree with the Government's alternative argument for affirmance that probable

cause combined with exigent circumstances justified this warrantless seizure. *See, e.g.*, *United States v. Stephen*, 984 F.3d 625, 630 (8th Cir. 2021).

Thus, we assume without deciding that the investigators' acquisition of the laptop was a Fourth Amendment seizure. The Fourth Amendment prohibits "unreasonable seizures." *Robbins v. City of Des Moines*, 984 F.3d 673, 680 (8th Cir. 2021). "The warrantless seizure of property is per se unreasonable unless it falls within a well-defined exception to the warrant requirement." *Id.* One such exception is when "law enforcement authorities have probable cause to believe" property "holds contraband or evidence of a crime" and "the exigencies of the circumstances demand" immediate seizure "pending issuance of a warrant to examine its contents." *United States v. Place*, 462 U.S. 696, 701 (1983). Accordingly, the investigators' warrantless seizure of Mays's laptop was not unreasonable under the Fourth Amendment if (1) they had probable cause to believe it contained contraband or evidence of a crime and (2) exigent circumstances demanded immediate seizure. *See Stephen*, 984 F.3d at 630-31.

First, based on Holmes's statements to them, the investigators had probable cause to believe the laptop contained evidence of a crime. "Probable cause exists when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Reed*, 921 F.3d 751, 757 (8th Cir. 2019) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Holmes told investigators that part of Mays's fraud scheme involved going to court and pretending to be an attorney as well as that Mays would bring his laptop to court. He also informed them that he had searched the laptop himself and found a file labeled "Evidence" on it, which in context sounded like it may have related to his fraud scheme. In other words, investigators learned from Holmes that the "laptop likely was used to further [Mays's] scheme" and that evidence of that scheme may be on the laptop. *See United States v. Smith*, 715 F.3d 1110, 1113-14, 1116-17 (8th Cir. 2013) (concluding that the warrantless seizure of the defendant's messenger bag was supported by probable cause because the investigators had learned that a laptop likely was used to further the defendant's fraud scheme and

believed the bag contained a laptop given its size and shape). These statements made it fairly probable that evidence of Mays's fraud would be found on the laptop, furnishing investigators with probable cause to seize it.

Mays contends that Holmes was neither a credible nor a reliable informant, and, because his statements are the only undisputed basis in the record to support a finding of probable cause, these deficiencies prohibit such a finding. We consider the totality of the circumstances in determining whether an informant's statements provide probable cause. *United States v. Lewis*, 738 F.2d 916, 922 (8th Cir. 1984). "The credibility and reliability of a person providing information to the police are important factors to be considered" in this analysis. *United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1996)

One "important" consideration in assessing an informant's credibility and reliability is whether the informant is known or anonymous. *United States v. Nolen*, 536 F.3d 834, 839-40 (8th Cir. 2008). "[A] tip received from a known informant will more readily support a finding of probable cause," as the informant's "reputation can be assessed" and she "can be held responsible if her allegations turn out to be fabricated." *Id.* Here, Holmes was known to the investigators—he met with them in person. This "personal questioning" of Holmes enhances his "reliability and credibility." *See United States v. Buchanan*, 574 F.3d 554, 562 (8th Cir. 2009).

Also, "statements against the penal interest of an informant naturally carry considerable weight" in assessing an informant's credibility. *LaMorie*, 100 F.3d at 553. Holmes admitted to taking Mays's laptop without permission. As "[p]eople do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions," Holmes's admission bolsters his credibility. *See United States v. Harris*, 403 U.S. 573, 583-84 (1971) (plurality opinion).

If these two factors were not enough, the investigators also corroborated some of the information Holmes told them. *See Nolen*, 536 F.3d at 840 (noting that "some

independent verification to establish reliability" is required when information is supplied by an "unproven informant"). Holmes told investigators he had taken Mays's HP laptop, had it at his current residence, and invited them to come get it from him. The investigators then went to Holmes's residence and obtained from him an HP laptop. This "corroboration of even innocent, minor details can support a finding of probable cause." *See United States v. Stevens*, 530 F.3d 714, 719 (8th Cir. 2008).

Mays counters that some of Holmes's statements to the investigators undermined his credibility (for instance, some statements revealed a possible motive to lie) and diminished his reliability (for instance, in some statements he admitted he was speculating about certain aspects of Mays's conduct). However, the facts that Holmes met in person with the investigators, that he made statements against his own penal interest to them, and that the investigators corroborated some details he relayed to them bolster his credibility and reliability. In the totality of the circumstances, we conclude that Holmes's statements were sufficiently credible and reliable to furnish probable cause for the warrantless seizure of the laptop. *See, e.g.*, *United States v. Allen*, 297 F.3d 790, 793-95 (8th Cir. 2002) (affirming a finding of probable cause based on informant's statements "because his statements were against his penal interest and because the police were able to corroborate some of the information he provided").

Second, based on Holmes's statements to them, the investigators had an objectively reasonable belief that exigent circumstances demanded the seizure. "The existence of exigent circumstances is an objective analysis focusing on what a reasonable, experienced police officer would believe." *United States v. Williams*, 431 F.3d 1115, 1118 (8th Cir. 2005) (internal quotation marks omitted). As relevant here, exigent circumstances exist when, if the property is not seized immediately, there is a risk that the evidence contained therein would be lost, *see Garmon v. Foust*, 741 F.2d 1069, 1074-75 (8th Cir. 1984), or destroyed, *see Radloff v. City of Oelwein*, 380 F.3d 344, 348 (8th Cir. 2004).

Holmes told investigators that Mays was "gung ho" about recovering his laptop. He also told them about threatening-sounding voicemails he had received seeking the return of the laptop to Mays, which one of the investigators suggested sounded as if someone acting at Mays's behest was impersonating a police officer. With Mays "actively searching" for his laptop, the investigators "risked losing digital evidence" on the laptop "without immediate seizure," as Mays easily could have removed or destroyed any evidence it contained upon reclaiming it from Holmes. *See Stephen*, 984 F.3d at 631 (finding exigent circumstances on similar facts). The investigators thus had an objectively reasonable belief that exigent circumstances demanded immediate seizure. *See id.*; *United States v. Clutter*, 674 F.3d 980, 983, 985 (8th Cir. 2012) (concluding that the risk that evidence of child-pornography offenses believed to be on defendant's computers would be removed or destroyed presented an exigent circumstance justifying the warrantless seizure of those computers, even though the defendant was in jail at the time of the warrantless seizure); *Garmon*, 741 F.2d at 1074 (finding that exigent circumstances justified the warrantless seizure of a package due to the "risk of the package's disappearance before a warrant could be obtained," even though in hindsight it may have "appear[ed] that the risk of the package's disappearance was small").

In short, probable cause and exigent circumstances justified the investigators' warrantless seizure of Mays's laptop. Therefore, that seizure did not violate Mays's Fourth Amendment rights.

B.

Mays also argues that the investigators' retention of the laptop for fifteen days before seeking a warrant to search it was unreasonable under the Fourth Amendment. The district court analyzed this point and concluded that the fifteen-day delay between seizure and application for the search warrant was not unreasonable. We agree.

"[A] seizure reasonable at its inception because [it is] based upon probable cause may become unreasonable as a result of its duration . . . ." *Segura v. United States*, 468 U.S. 796, 812 (1984). "[T]he duration of the seizure pending the issuance of a search warrant must still be reasonable," *United States v. Respress*, 9 F.3d 483, 488 (6th Cir. 1993), and reasonableness "is measured in objective terms by examining the totality of the circumstances," *United States v. Farnell*, 701 F.3d 256, 261 (8th Cir. 2012); *accord United States v. Laist*, 702 F.3d 608, 613 (11th Cir. 2012). "There is unfortunately no bright line past which a delay becomes unreasonable." *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012); *see also Illinois v. McArthur*, 531 U.S. 326, 329, 331 (2001) (admonishing against "employing a *per se* rule of unreasonableness" in case involving the warrantless seizure of a person). Thus, "in some contexts, a delay as short as 90 minutes may be unreasonable," while in other contexts, "a delay of over three months may be reasonable." *Laist*, 702 F.3d at 614.

To determine the reasonableness of a delay, we "must 'balance the privacy-related and law enforcement-related concerns'" implicated. *Id.* at 613 (quoting *McArthur*, 531 U.S. at 331); *see also Soldal v. Cook Cty.*, 506 U.S. 56, 71 (1992) (stating that a Fourth Amendment reasonableness determination involves a "careful balancing of governmental and private interests"). On the private-interests side, relevant considerations include the significance of the interference with the person's possessory interest, the duration of the delay, whether the person consented to the seizure, and the nature of the seized property. *Laist*, 702 F.3d at 613-14. On the government-interests side, relevant considerations include the government's legitimate interest in holding the property as evidence, the nature and complexity of the investigation, the quality of the warrant application and the amount of time we expect the application would take to prepare, and any other evidence proving or disproving law enforcement's diligence in obtaining the warrant. *Id.* at 614. "These factors are by no means exhaustive, but they are the most relevant when we seek to 'balance the privacy-related and law enforcement-related concerns'" at stake. *Id.* (quoting *McArthur*, 531 U.S. at 331).

On Mays's side, the nature of the seized property—his laptop—weighs most heavily in his favor. *See Clutter*, 674 F.3d at 984 (recognizing that "[f]or most people, their computers are their most private spaces"). His lack of consent also weighs in his favor. *See Laist*, 702 F.3d at 616. The significance of the seizure's interference with his possessory interest in the laptop further weighs in his favor, but less so. On the one hand, by the time of the seizure, Mays actively was trying to recover the laptop from Holmes. *See Burgard*, 675 F.3d at 1033 (considering whether the person "ever asserted a possessory claim" to the property to determine if "the seizure in fact affected her possessory interests"). On the other hand, Mays did not possess the laptop at the time of the seizure. *Cf. Clutter*, 674 F.3d at 984 (concluding that a warrantless seizure of the defendant's computers "did not meaningfully interfere with his possessory interests" because he was in jail and so not in possession of the computers at the time of the seizure). Finally, fifteen days is a considerable period, which weighs in Mays's favor. *See Laist*, 702 F.3d at 616 (weighing in the defendant's favor the fact that the FBI seized and held his computer and hard drives for twenty-five days).

On the Government's side, a "key factor" in its favor is that, as discussed above, the investigators had probable cause to believe the laptop contained evidence of Mays's fraud. *See Burgard*, 675 F.3d at 1033 ("The state has a stronger interest in seizures made on the basis of probable cause than in those resting only on reasonable suspicion."). The complexity of the nearly year-long investigation into Mays also weighs in the Government's favor. There were four investigative teams here working on two distinct tracks: one FBI team and a team from the Bloomington Police Department were investigating the fraud matter, while another FBI team and a team from the Richfield Police Department were investigating the sex-trafficking matter. *See Laist*, 702 F.3d at 617 (weighing in the government's favor the fact that the "investigation took roughly a year and involved the efforts of numerous FBI agents"). Relatedly, the "considerable effort" it took to prepare the affidavit supporting the warrant application is a "critical fact[]" in the Government's favor and shows its diligence. *See id.* at 616-17. The affidavit was eighteen pages long and included seven pages of specific information about Mays's alleged conduct

learned by each of the four investigation teams during their respective investigations. *See id.* at 617 (characterizing approximately three pages of specific information about the defendant's conduct as "very substantial").

Balancing all these considerations, we agree with the district court that the fifteen-day delay was not constitutionally unreasonable. A fifteen-day seizure based solely on probable cause may be "far from ideal," but, in the totality of the circumstances here, we conclude it was reasonable. *See id.* at 616-17 (holding that the twenty-five-day warrantless seizure of the defendant's computer and hard drives was reasonable).

## III.

Mays next argues that the district court committed procedural error in sentencing him to 132 months' imprisonment. Specifically, he claims (1) that the district court failed to explain adequately the sentence imposed by failing to address Mays's arguments for a downward variance and (2) that the district court based its sentence on clearly erroneous facts, which is ostensibly demonstrated by the district court's taking issue with Mays's lack of remorse for the child-pornography offense and referring to the seventeen-year-old whom Mays video-recorded as his "victim." *See United States v. Luscombe*, 950 F.3d 1021, 1031 (8th Cir. 2020) (identifying "failing to sufficiently explain the sentence" and "basing the sentence on clearly erroneous facts" as procedural errors).

## A.

As for Mays's challenge to the adequacy of the district court's explanation, the Government asserts that ordinarily we review this issue for an abuse of discretion. Our precedent is not entirely clear on this point. *Compare United States v. Morris*, 918 F.3d 595, 597-98 (8th Cir. 2019) (appearing to review this issue *de novo*, although not stating specifically what standard of review applied), *with United States v. Martinez-Hernandez*, 593 F.3d 761, 762 (8th Cir. 2010) (noting that we

review "a sentence for an abuse of discretion," then commenting that the "first step" in reviewing a sentence is ensuring that the district court did not commit a significant procedural error such as "failing to adequately explain why a sentence was chosen"). And there is a circuit split as to the proper standard of review for this issue. *Compare United States v. Davis*, 764 F.3d 690, 694 (7th Cir. 2014) ("We review de novo whether a judge adequately explained her chosen sentence."), *and United States v. Upshaw*, 918 F.2d 789, 792 (9th Cir. 1990) (treating this issue as a question of law and reviewing it *de novo*), *with United States v. Lynn*, 592 F.3d 572, 575-76 (4th Cir. 2010) (holding that abuse-of-discretion review is the proper standard of review for this issue). Additionally, the Government argues that we should review this issue for plain error in this case because, although Mays objected before the district court to its ostensible "failure to give any consideration" to his arguments for a downward variance, that objection was not enough to preserve the inadequate-explanation argument Mays raises on appeal. *See United States v. White*, 863 F.3d 1016, 1021 (8th Cir. 2017) ("Because [the defendant] failed to object to the adequacy of the district court's explanation at sentencing, we review for plain error.").

We need not resolve what the proper standard of review is, whether in general or in this case, because Mays's challenge fails even under *de novo* review. *See, e.g.*, *United States v. Wanna*, 744 F.3d 584, 588 (8th Cir. 2014). "All that is required" for an adequate explanation is for the sentencing judge to "'set[] forth enough to satisfy [us] that he has considered the parties' arguments and has a reasoned basis'" for the sentence imposed. *United States v. Saguto*, 929 F.3d 519, 525 (8th Cir. 2019) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). "[N]ot every reasonable argument advanced by a defendant requires a specific rejoinder by the judge." *United States v. Lee*, 553 F.3d 598, 600 (8th Cir. 2009). "In determining whether a district court has adequately explained its reasons for imposing a particular sentence, the context for the appellate court's review is the entire sentencing record, not merely the district court's statements at the hearing." *United States v. Robinson*, 516 F.3d 716, 718 (8th Cir. 2008).

Mays's grievance is that the district court failed to respond explicitly to arguments he raised both in his sentencing memorandum and at the sentencing hearing for a downward variance. These arguments, in essence, were that Mays's advisory sentencing guidelines range of 121 to 151 months' imprisonment was inflated by "irrational" (albeit applicable) child-pornography guidelines provisions and, relatedly, that the guidelines range should be disregarded for policy reasons.

Although the district court did not address these arguments directly, we nevertheless find its explanation adequate. To begin, where, as here, "issues are raised in sentencing position papers and at the sentencing hearing, a district court is presumed to consider them." *See United States v. Campbell*, 976 F.3d 775, 777 (8th Cir. 2020) (per curiam). We thus "presume that the district court considered" Mays's arguments for a downward variance and implicitly "rejected them." *See United States v. Timberlake*, 679 F.3d 1008, 1012 (8th Cir. 2012). This presumption is corroborated here by the district court's comment at the start of its explanation that it did not presume the guidelines range was "reasonable," which in context seems to be an acknowledgment of Mays's claim that his guidelines range was "irrational." The district court then explained that it saw "no clear mitigating factors" in Mays's background, while it noted a number of aggravating factors about Mays's offense conduct and criminal history as well as its concerns about Mays's likelihood to recidivate. In other words, the district court "concluded that a sentence within the advisory range was appropriate in light of several aggravating factors," and it simply "implicitly rejected" Mays's arguments to the contrary. *See United States v. Banks*, 960 F.3d 982, 985 (8th Cir. 2020). No further explanation was required. *See id.*

B.

Mays also contends that the district court procedurally erred by basing its sentence on clearly erroneous facts. According to Mays, the district court's error here is demonstrated by its reference to the seventeen-year-old as Mays's "victim" and its statement that Mays had failed to "own[] up to his mistakes or demonstrate[] sincere remorse" toward her. Mays correctly notes that the district court agreed to

disregard objected-to statements in the Presentence Investigation Report ("PSR") that he "played a role" in sex trafficking the seventeen-year-old and that he raped her. He then points out that, with these statements disregarded for sentencing purposes, his child-pornography offense conduct consisted of nothing more than consensually, albeit illegally, video-recording himself having consensual, legal sex with a seventeen-year-old. *See United States v. Bach*, 400 F.3d 622, 628-29 (8th Cir. 2005) (noting that the age of consent in Minnesota is sixteen but that a minor for purposes of 18 U.S.C. § 2252 includes anyone under the age of eighteen). Thus, according to Mays, the seventeen-year-old was not his "victim," and he did not have anything about which to be remorseful. Because the district court made such comments, however, Mays claims the district court must have taken into consideration the objected-to statements and thus "commit[ted] procedural error . . . by basing [the] sentence on unproven, disputed allegations rather than facts." *See United States v. Trung Dang*, 907 F.3d 561, 565 (8th Cir. 2018).

While Mays objected to the aforementioned statements in the PSR, he did not object to the district court's comments that Mays contends show the district court relied on those statements, so we review this issue for plain error. *See United States v. Cottrell*, 853 F.3d 459, 461-62 (8th Cir. 2017) (reviewing this issue for plain error because, although the defendant objected to statements in the PSR about a prior conviction, he did not object when the district court referred at sentencing to that prior conviction as recounted in the PSR); *accord United States v. Walker*, 802 F. App'x 209, 210-11 (8th Cir. 2020) (per curiam). Even so, in "[l]ooking to the record as a whole," we "conclude that the district court did not commit a procedural error, much less a plain error," because Mays "simply misinterprets the district court's statements." *See Walker*, 802 F. App'x at 211. In context, the district court's "victim" reference was based on the undisputed fact that the seventeen-year-old was the victim of Mays's child-pornography crime. This is made clear by the district court's first reference to her during the sentencing hearing as "the then minor victim of the child pornography offense." Referring to the seventeen-year-old as a "victim" in this sense and taking issue with Mays's lack of remorse for involving her in his child-pornography offense is unsurprising given it is widely recognized that "the use

-14-

of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *See New York v. Ferber*, 458 U.S. 747, 758 (1982). We find no error here, let alone plain error.

## IV.

Finally, Mays contests the district court's imposition of four special conditions of supervised release. When, as here, "a defendant properly objects at sentencing, we review special conditions for abuse of discretion." *See United States v. Jennings*, 930 F.3d 1024, 1026 (8th Cir. 2019).

"Special conditions may be imposed so long as the conditions are reasonably related to the sentencing factors enumerated in 18 U.S.C. § 3553(a), involve no greater deprivation of liberty than is reasonably necessary, and are consistent with the Sentencing Commission's pertinent policy statements." *United States v. Cramer*, 962 F.3d 375, 383 (8th Cir. 2020) (internal quotation marks omitted). "In fashioning a special condition of supervised release, a court must make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record so as to ensure that the special condition satisfies the statutory requirements." *United States v. Deatherage*, 682 F.3d 755, 758 (8th Cir. 2012). That said, we must disregard errors that do not affect a defendant's substantial rights. Fed. R. Crim. P. 52(a). Thus, we may affirm the district court's imposition of special conditions, even if it did not conduct the requisite individualized inquiry and make sufficient findings, "if the basis for the imposed condition can be discerned from the record." *United States v. Thompson*, 653 F.3d 688, 694 (8th Cir. 2011). "The burden of proving that an error does not affect substantial rights is upon the 'beneficiary of the error,' here, the government." *United States v. Haidley*, 400 F.3d 642, 644 (8th Cir. 2005).

Mays challenges special conditions (c), (d), (f), and (g). Special condition (c) prohibits him from possessing or using a computer or having access to any online service capable of accessing pornography or engaging in financial transactions

without the prior approval of the U.S. Probation Office. Special condition (d), in pertinent part, prohibits him from possessing, viewing, accessing, or otherwise using "any material that is sexually stimulating or sexually oriented deemed to be inappropriate by the U.S. Probation Officer in consultation with the treatment provider." Special condition (f) prohibits him from associating with persons under the age of eighteen "except in the presence of a responsible adult who is aware of the nature of [his] background and current offense and who has been approved by [his] probation officer." Special condition (g) requires him, as relevant here, to participate in sex-offender treatment. The district court did not make findings as to why it concluded imposing these special conditions satisfied the requisite criteria.

For special conditions (c), (f), and (g), the Government nevertheless asks us to discern from the record the basis for these conditions and to affirm them based on the facts of Mays's child-pornography offense conduct assumed by the district court for sentencing purposes (namely, that Mays illegally, albeit consensually, video-recorded himself having legal, consensual sex with a seventeen-year-old). In support, the Government cites only three cases where we upheld special conditions like these, all of which involve inapposite facts. *See United States v. Wiedower*, 634 F.3d 490, 494 (8th Cir. 2011) (affirming sex-offender-treatment special condition in light of defendant's demonstrable addiction to child pornography); *United States v. Durham*, 618 F.3d 921, 944-45 (8th Cir. 2010) (majority opinion) (affirming a special condition restricting the defendant's internet access after taking account of the facts that the defendant used the internet to acquire a large collection of child pornography and to distribute child pornography); *United States v. Stults*, 575 F.3d 834, 838-39, 839 n.2, 850-51 (8th Cir. 2009) (affirming restricted-contact-with-minors special condition where defendant's criminal past included attempted sexual assault of his eleven-year-old niece and defendant's instant child-pornography offense conduct involved possessing child pornography depicting prepubescent children and sadomasochistic conduct).

Of course, the "specific facts" matter because "a court may not impose a special condition on all those found guilty of a particular offense." *United States v.*

*Davis*, 452 F.3d 991, 995 (8th Cir. 2006). At this juncture, the Government has failed to persuade us that these special conditions are warranted on the record as it currently stands, so we are unable to conclude that the district court's failure to explain why it found these special conditions warranted was harmless. Accordingly, we will vacate and remand special conditions (c), (f), and (g) to the district court so that it may conduct the requisite "individualized inquiry" and "make sufficient findings on the record" if it decides to reimpose them. *See Deatherage*, 682 F.3d at 758.

As for the portion of special condition (d) Mays challenges, the Government acknowledges that, while this portion of that condition was in the written judgment, it was not part of the district court's oral pronouncement of this special condition. At sentencing, the district court prohibited Mays from possessing, viewing, accessing, or otherwise using only child pornography. "The oral pronouncement by the sentencing court is the judgment of the court," *United States v. Tramp*, 30 F.3d 1035, 1037 (8th Cir. 1994), and, "[t]o the extent there is any conflict between the district court's oral announcement of the special condition at sentencing and its written judgment, the oral sentence controls," *United States v. Puckett*, 929 F.3d 1004, 1006 (8th Cir. 2019) (per curiam). Granted, if a district court's written judgment is "consistent" with its discernible intent in the oral pronouncement and simply "clarified" an "imprecisely" pronounced special condition, there is no conflict and we may treat the written judgment as operative. *United States v. Carter*, 652 F.3d 894, 897 (8th Cir. 2011); *see also United States v. Thompson*, 888 F.3d 347, 354 (8th Cir. 2018) ("While an oral sentence controls over a conflicting written judgment, mere imprecise language at a hearing will not negate the court's obvious intent." (internal quotation marks omitted)). But the Government makes no argument that the district court's oral pronouncement of special condition (d) was merely ambiguous. Instead, it concedes that the broader written judgment conflicts with the narrower oral pronouncement. *See United States v. Mudd*, 685 F.3d 473, 480 (5th Cir. 2012) ("If the written judgment broadens the restrictions or requirements of supervised release from an oral pronouncement, a conflict exists.").

When such conflicts exist, the portion of the written judgment "that is broader than the oral version is void." *United States v. Brave*, 642 F.3d 625, 627 (8th Cir. 2011). The Government thus asks us to remand this special condition to the district court with instructions for it to reconcile the written judgment with the oral pronouncement by striking the disputed portion of this special condition. *See, e.g.*, *United States v. Morais*, 670 F.3d 889, 895 (8th Cir. 2012) (remanding in these circumstances "with instructions to amend the written judgment to conform to the oral pronouncement" of a special condition). As this is the "appropriate remedy," *see United States v. Mireles*, 471 F.3d 551, 558 (5th Cir. 2006), we will do so.

## V.

For the foregoing reasons, we affirm the district court's denial of Mays's motion to suppress; we affirm the sentence of imprisonment it imposed; we vacate special conditions (c), (f), and (g), and we remand them to the district court for further proceedings consistent with this opinion; and we remand special condition (d) to the district court for it to amend its written judgment to conform to its oral pronouncement regarding this special condition.

_____