# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1228
_____

United States of America

*Plaintiff - Appellee*

v.

Leroy Lemonte Perry Williams, Jr., also known as Le-Roy Lamonte'-Perry
Williams, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: December 18, 2024
Filed: May 1, 2025

_____

Before SMITH, GRUENDER, and STRAS, Circuit Judges.

_____

SMITH, Circuit Judge.

Leroy Williams Jr. appeals a jury verdict against him for attempted arson under 18 U.S.C. § 844(i). He also appeals his sentence, arguing that the district court[1]

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

committed procedural error and imposed a substantively unreasonable sentence. We affirm.

## I. *Background*

On August 26, 2020, around 6:00 p.m., a homicide occurred in downtown Minneapolis, Minnesota. Not long after the murder, the suspected killer committed suicide near Nicollet Mall. Rumors spread that police had killed the suspect. Police released their video showing the suspect's suicide. Nonetheless, crowds began protesting in downtown Minneapolis. Tensions escalated, prompting city and state officials to declare a state of emergency, impose a curfew, and deploy the National Guard. Ultimately, after substantial unrest, approximately 72 businesses suffered damage.

Williams apparently knew the murder victim well. Around 8:00 p.m. that night, a Facebook Live video recorded and posted Williams saying, "George Floyd, [r]ound two . . . . We're fittin' [sic] tear this city back up." R. Doc. 383, at 3. Later, around 9:00 p.m., a Speedway Gas Station security camera recorded Williams stealing an automatic change dispenser containing $279 after someone else broke into the gas station with a baseball bat.

Around 11:00 p.m., Williams was seen on camera outside and within the Target Headquarters. Williams can be seen entering the building briefly with the crowd. A participant in the unrest, Shador Jackson, used a construction sign to break into the Headquarters' mailroom entrance. Williams was present with Jackson. When security personnel approached, Williams then fled.

Williams returned to the Target Headquarters minutes later carrying a cardboard box. Outside the mailroom entrance, he attempted to ignite the corner of the box with a cigarette lighter. He then walked toward the mailroom entrance and leaned inside. Multiple flashes of light can be seen around his hand on the grainy surveillance camera footage on the inside of the Target Headquarters.

Williams then collected more cardboard from outside the building and returned to the mailroom entrance, placing the cardboard inside the entrance. A man outside the building confronted Williams, and Williams shoved him away. Williams stood near the entrance to the mailroom for several more minutes, but did not lean in and there were no more flashes of light. Finally, Williams left the area with the person who broke into the Speedway Gas Station with a baseball bat.

The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) investigated the scene the next day. It found no physical evidence of an attempted arson inside the mailroom entrance at the Target Headquarters. Several weeks later, authorities arrested Williams, and a grand jury initially indicted him, Shador Jackson, and Victor Edwards with conspiracy to commit arson.[2] Williams was conditionally released. One condition required that he remain in a halfway house.

In January 2021, while on pretrial release, Williams visited the Target retail store in downtown Minneapolis. While there, he confronted a Target security officer who had assisted the ATF in identifying Williams from the surveillance video.[3] Williams verbally abused her and blamed her for his federal charges, stating her name was on the ATF paperwork. The Target security officer would later testify that Williams's encounter frightened her, prompting a name change on Facebook after the incident.

---

[2]Jackson and Edwards had successfully started a fire in the mailroom causing nearly $1 million in damage. Jackson pleaded guilty to conspiracy to commit arson and was ultimately sentenced to 33 months' imprisonment. Edwards went to trial, was convicted of aiding and abetting arson and rioting, and was sentenced to 100 months' imprisonment. *See United States v. Edwards*, 65 F.4th 996, 998 (8th Cir. 2023).

[3]Williams has a contentious history with that Target store, as he had previously been removed from it several times, cited for trespass at the store, and arrested at the store.

Williams's rule violations caused his discharge from the halfway house and his pretrial detention. On January 25, 2021, Williams pleaded guilty to the attempted arson charge without a plea agreement. After the plea, Williams moved for release to a drug treatment program and deferred sentencing. The motion was granted. After completing that program, he was released on his own recognizance for a long-term treatment program. In that program, he later tested positive for alcohol and cocaine.

Williams again absconded and stopped communicating with pretrial services. Law enforcement later arrested him in Indiana on new charges, including felony burglary, felony theft, and criminal mischief. During that arrest, Williams provided the police with a false name. Williams was eventually transferred back to the District of Minnesota and detained for the remainder of the federal proceedings against him.

Before trial, Williams requested new counsel and to withdraw his guilty plea. The court warned Williams that if he withdrew his plea, the government would seek an arson charge, which carried a 5-year mandatory minimum and 20-year maximum sentence, as opposed to the 5-year maximum sentence for his current indicted charge, conspiracy to commit arson. Williams confirmed that he understood the risk and moved to withdraw the plea anyway, which the district court granted.

Williams moved for acquittal after the government's case in chief claiming insufficiency of the evidence. The motion was denied. Williams then testified in his own defense. He offered several alternative explanations for his suspicious behavior other than arson. As to the Facebook Live video, he testified that his statements were taken out of context. He alleged that he had asked police officers for a bullhorn to calm the agitating crowds, and when he was denied, his statement reflected a belief that police had given tacit permission to engage in "[r]ound [t]wo" to tear up the city. R. Doc. 383, at 3. Williams admitted that he participated in the theft at the Speedway Gas Station.

Williams also testified regarding his actions at the Target Headquarters. He claimed that while he was there, he was asked about his relationship with the murder

suspect. In response, Williams stated that he decided to take a tube of sage that he kept in memory of his deceased friend, apply it to the edge of the cardboard box, and ignite it "to get rid of negative energy." R. Doc. 407, at 205. He claimed that the wind was blowing, so he placed the unlit cardboard box inside the mailroom entrance. He asserted that he reached into the mailroom to try to find the sage after inadvertently dropping it. He denied attempting to set the cardboard box on fire inside the Target Headquarters mailroom entrance.

The jury returned a guilty verdict. Before sentencing, Williams's presentence investigation report assigned him a total offense level of 26 and a criminal history score of VI. The base offense level was 24, which was increased by two levels because of an enhancement based on intimidating a witness, the Target security officer. The Guidelines range was 120–150 months. Prior to the sentencing hearing, Williams urged consideration of certain mitigating factors. These factors included the comparative conduct of his codefendant, which he alleged was more egregious. Ultimately, the court sentenced Williams to 120 months' imprisonment, the low end of the Guidelines range. In imposing the sentence, the district court discussed Williams's blame shifting, his mental illness, his substance abuse, the very serious nature of the offense, his near-constant criminal history, his witness intimidation, and his abscondment from pretrial release.

The district court did not expressly address the alleged sentencing disparity with the codefendants. Williams himself, not his counsel, objected, stating: "How do I get ten years for attempted arson . . . and the people that set fire got less?" R. Doc. 434, at 39. Williams continued expressing his skepticism of the sentence's fairness. He denied causing any damage or starting any fire and was sentenced to more time than his codefendants. The district court did not respond to Williams's question and ended the hearing.

## II. *Discussion*

On appeal, Williams argues that there was insufficient evidence to support the verdict. Further, he contends that the district court committed procedural error by

not adequately explaining the sentencing disparity between him and his codefendants. Lastly, Williams challenges the substantive reasonableness of his sentence.

## A. *Sufficiency of the Evidence*

Williams argues that the evidence was insufficient to support his conviction for attempted arson. He contends that the government's case rested entirely on grainy, overexposed surveillance videos that did not clearly show beyond a reasonable doubt that Williams attempted to set fire inside the Target mailroom entrance. He points out that there was no scorching or any other physical evidence of fire and that similar flashes of light appeared in the same location when he was not present. He maintains that his actions were consistent with his testimony that he was attempting to burn sage as part of a mourning ritual for his murdered friend.

This court will overturn a conviction "only if no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt." *United States v. Bell*, 477 F.3d 607, 613 (8th Cir. 2007). And we will view "the evidence in a light most favorable to the verdict and accept[] all reasonable inferences supporting the verdict." *United States v. Colton*, 742 F.3d 345, 348 (8th Cir. 2014) (per curiam). "[O]ne possible innocent explanation for the government's evidence does not preclude a reasonable jury from rejecting the exculpatory hypothesis in favor of guilt beyond a reasonable doubt." *United States v. Johnson*, 474 F.3d 1044, 1050 (8th Cir. 2007) (internal quotation marks omitted). "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam).

Williams avers that no rational trier of fact could conclude that the videos showed beyond a reasonable doubt that he attempted to set fire inside the Target mailroom entrance. He contends that the mailroom entrance video is too grainy and difficult to discern to provide anything more than speculation or conjecture as to his actions inside the vestibule. Williams, however, does not dispute the government's proof of his other actions. These include the following: (1) stating on a Facebook

Live video, "George Floyd, Round Two . . . . We're fittin' [sic] tear this city back up." R. Doc. 383, at 3; (2) looting a gas station; (3) being involved in the initial break-in in which his codefendants broke into the Target Headquarters with a road sign; (4) attempting to set the cardboard box on fire outside the Target Headquarters just seconds before entering the building; (5) placing the cardboard box inside the mailroom entrance; (6) leaning down near the cardboard inside the mailroom entrance. He also does not dispute his contentious history with the Target store, having been removed from it several times, cited for trespass, and arrested there. Rather than deny the actions, Williams offered alternative explanations to criminality for the behaviors. The jury was in the best position to consider all the evidence and resolve any fact questions regarding his actions and motives. Williams's innocent explanations do not prevent a reasonable jury from rejecting those explanations in favor of guilt beyond a reasonable doubt. *See Johnson*, 474 F.3d at 1050.

### B. *Sentencing Disparity*

Williams also argues that the district court failed to properly explain the disparity between his codefendants' sentences of 33 and 100 months and his sentence of 120 months. He contends that the district court failed to consider this key mitigating argument, considering that his codefendants caused nearly $1 million in fire damage and he undisputedly caused no fire damage.

Williams's claim fails. Every argument advanced by a defendant does not require a specific rejoinder by the judge in support of its sentence. *United States v. Mays*, 993 F.3d 607, 619 (8th Cir. 2021). We will examine the entire sentencing record to determine if the district court has adequately explained its reasons for a sentence. *Id*. If the issue is raised in a sentencing position paper, a district court is presumed to have considered and rejected it. *See United States v. Timberlake*, 679 F.3d 1008, 1012 (8th Cir. 2012). "All that is required is that the sentencing judge sets forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking

authority." *United States v. Saguto*, 929 F.3d 519, 525 (8th Cir. 2019) (cleaned up). The district court did so here.

Before the sentencing hearing, both parties submitted sentencing memoranda. Both Williams and the government addressed the alleged sentencing disparity. Ultimately, the district court balanced various factors in imposing the 120-month sentence, considering both aggravating elements (obstruction of justice, deflection of blame) and mitigating ones (intelligence, mental illness, substance abuse). Although the court did not explicitly address the codefendants' sentences at the sentencing hearing for Williams, it demonstrated awareness of the statutory sentencing factors and provided reasoning for its decision, both at the sentencing hearing and in its statement of reasons. We are satisfied that the district court considered the parties' arguments and provided a well-reasoned basis for its decision.

C. *Substantive Reasonableness*

In addition to arguing that the district court failed to adequately explain the sentencing disparity between him and his codefendants, Williams also argues that the sentencing disparity renders his sentence substantively unreasonable. This court reviews the substantive reasonableness of a sentence "under a highly deferential abuse-of-discretion standard." *United States v. Jones*, 71 F.4th 1083, 1086 (8th Cir. 2023). "A sentencing court abuses its discretion if it fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." *United States v. Williams*, 913 F.3d 1115, 1116 (8th Cir. 2019) (per curiam) (quoting *United States v. Johnson*, 812 F.3d 714, 715 (8th Cir. 2016) (per curiam)).

After careful review of the record, we conclude that the district court did not abuse its discretion in imposing a sentence of 120 months' imprisonment. The court properly calculated Williams's Guidelines range and expressly considered the 18 U.S.C. § 3553(a) factors in its statement of reasons. At the sentencing hearing, the

district court discussed the seriousness of attempted arson, Williams's extensive criminal history, his tendency to blame others for his actions, his mental illness, and his drug use.

Williams disputes whether the district court gave appropriate weight to his mitigating factors, particularly the abuse, drug addiction, trauma, and homelessness that he experienced. Williams's arguments demonstrate disagreement with the district court's analytical conclusion, but they do not establish that the district court's analysis and ultimate decision were substantively unreasonable. *See e.g.*, *Jones*, 71 F.4th at 1087. The district court did not abuse its discretion in sentencing Williams to 120 months' imprisonment.

### III. *Conclusion*

Based on the foregoing reasons, we affirm the judgment of the district court.

_____