United States Court of Appeals

For the Eighth Circuit

_____

No. 17-3045
_____

United States of America

*Plaintiff - Appellant*

v.

Thomas Franklin Houck

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Joplin

_____

Submitted: April 10, 2018
Filed: April 26, 2018

_____

Before GRUENDER, MELLOY, and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Thomas Houck was indicted on one count of receipt and distribution of child pornography. *See* 18 U.S.C. § 2252(a)(2). Before trial, the district court granted Houck's motion to suppress, finding that the search of his recreational vehicle ("RV") exceeded the scope of an otherwise valid search warrant. Because the officers were

not objectively unreasonable in their belief that the RV fell within the warrant's authorization to search "any vehicles," we reverse.

## I.

As part of his work with a Pennsylvania computer-crimes task force, Detective Gregory Wahl located a computer that was sharing child pornography on the Ares peer-to-peer network. Wahl was able to establish the IP address of the computer, which he traced to the residence of Houck's mother in Manheim, Pennsylvania. This information led another member of the task force, Detective Keith Kreider, to conduct "basic surveillance" of the property, where he observed a pickup truck and a fifth-wheel trailer-style RV in the driveway. Kreider then applied for and obtained a search warrant. The warrant application included a request to search "any vehicles . . . present at the time of execution . . . due to the size and portability of many of today's media storage devices." Kreider later testified that he did not specifically identify the RV in the warrant application or seek a separate warrant to search the RV based on his belief that it fell within the scope of the warrant's authorization to search "any vehicles." He further testified that, had the warrant not expressly covered vehicles, he would have applied for a second warrant to search the RV.

Officers executed the search warrant on July 2, 2015. Upon arriving at the residence, the officers saw Houck's RV and pickup truck parked in the driveway. The truck had a trailer attachment, but the RV was not connected to it. The RV itself had Missouri license plates, a valid inspection tag, and a vehicle identification number. It had fully inflated tires and no permanent attachments to the ground. However, it was connected to water and electric lines, and there was a satellite dish attached to the roof. Kreider estimated that it would have taken approximately thirty minutes to prepare the RV for travel.

The officers proceeded to the door of the RV and requested that Houck and his girlfriend join them inside the residence. Kreider then read the execution portion of the warrant to the couple and Houck's mother, explaining that they were looking for computers with Ares software. Houck was the only one familiar with Ares, and he admitted to owning a laptop with the software installed on it. He further advised Kreider that his laptop was in the RV and even offered to retrieve it, but Kreider declined his proposal.

From there, the investigation proceeded on two fronts. Two detectives at the scene asked if Houck would accompany them to a nearby police station for an interview, and he agreed. Throughout the process, the detectives repeatedly advised Houck that his participation was voluntary and that he could terminate the interview at any time. He eventually admitted to downloading, viewing, and deleting numerous videos containing child pornography. Meanwhile, the officers at the residence executed the search and seized Houck's laptop, Apple iPhone 6, and Olympus XD picture card from the RV. They then conducted a forensic preview of the devices and located files that appeared to contain child pornography. A subsequent forensic examination revealed that external data-storage devices had been connected to the laptop. Because these devices were not located during the initial search, Kreider applied for a second warrant, which specifically identified Houck's RV as a location to be searched. The second search led to the seizure of two digital cameras.

After his indictment, Houck moved to suppress the evidence seized during the initial search of his RV. He also sought to suppress as fruits of the poisonous tree his statements to officers at the residence, his admissions during the stationhouse interview, and the evidence seized during the second search. *See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963). The district court referred the motion to a magistrate judge, who issued a report and recommendation ("R&R") finding that nearly all of the challenged evidence should be excluded. This conclusion was based primarily on an analysis of the Supreme Court's application of the "automobile

-3-

exception" to the warrantless search of a motor home in *California v. Carney*, 471 U.S. 386 (1985). Despite recognizing that the officers here had a valid search warrant, the magistrate judge applied *Carney* and determined that, while Houck's RV was "readily mobile," it qualified as a residence rather than a vehicle. The district court adopted the R&R in its entirety and granted Houck's motion to suppress all evidence obtained after he left his mother's property. The Government now appeals, arguing that the warrant's authorization to search "any vehicles" included the RV and that, even if mistaken, the officers' reading of the warrant was reasonable.

## II.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Ordinarily, evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule and, therefore, cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Cannon*, 703 F.3d 407, 412 (8th Cir. 2013) (internal quotation marks omitted). However, "suppression is not an automatic consequence of a Fourth Amendment violation. Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." *Herring v. United States*, 555 U.S. 135, 137 (2009). Indeed, the Supreme Court has described the exclusionary rule as an "extreme sanction," *United States v. Leon*, 468 U.S. 897, 916 (1984), "calculated to prevent, not repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it," *Elkins v. United States*, 364 U.S. 206, 217 (1960). With these principles in mind, when considering challenges to the suppression of evidence, we review a district court's "factual findings for clear error and application of law de novo." *United States v. Rodriguez*, 834 F.3d 937, 940 (8th Cir. 2016).

On appeal, the Government renews its argument that the plain language of the warrant authorized the search of the RV, as it was a vehicle located on the premises at the time of the original search. The Government notes that an RV is a "vehicle" under the common meaning of the word. *See Vehicle*, Black's Law Dictionary (10th ed. 2014) (defining "vehicle" as "[a]n instrument of transportation or conveyance"). It also claims that Missouri, Pennsylvania, and federal statutory definitions recognize fifth-wheel trailers like Houck's RV as vehicles. *See* Mo. Rev. Stat. § 301.010(62) (defining "trailer" as "any vehicle without motive power designed for carrying property or passengers on its own structure and for being drawn by a self-propelled vehicle"); 75 Pa. Cons. Stat. § 102 (defining "trailer" as "[a] vehicle designed to be towed by a motor vehicle"); 49 C.F.R. § 571.3 (recognizing "recreational vehicle trailers" as subject to the Federal Motor Vehicle Safety Standards).

As an initial matter, it is not clear that the district court's determination that Houck was using the RV as a residence precluded it from finding that it was also a "vehicle" for purposes of the warrant. *See United States v. Sturgis*, 652 F.3d 842, 844 (8th Cir. 2011) ("When considering whether a search exceeded the scope of a warrant, we look to the fair meaning of the warrant's terms." (internal quotation marks omitted)); *see also United States v. Montgomery*, 527 F.3d 682, 687 (8th Cir. 2008) ("Police may lawfully search all buildings, containers, and vehicles on the property to be searched in which the contraband sought might be found."); *cf. Carney*, 471 U.S. at 390-95 (determining that a motor home used as a residence qualified as a "vehicle" for the purposes of a *warrantless* search under the automobile exception). However, even assuming that the RV fell outside the scope of the warrant, we conclude that the officers made, at most, an "honest mistake" in interpreting the warrant to include the RV. *See Maryland v. Garrison*, 480 U.S. 79, 87 (1987).

In *Maryland v. Garrison*, the Supreme Court reviewed the exclusion of evidence seized during the search of two separate apartment units that encompassed an entire floor, where the applicable warrant authorized the search of only one of the

apartments. *Id.* at 80. Given that it was not apparent to the officers that the floor was subdivided into two units, the Court held that the search did not violate the Fourth Amendment. *See id.* at 88. In reaching this conclusion, the Court focused on the reasonableness of the officers' interpretation of the warrant: "[T]he officers' conduct was consistent with a *reasonable* effort to ascertain and identify the place intended to be searched . . . ." *Id.* (emphasis added). The Court further explained that we assess the reasonableness of officers' actions "in light of the information available to them at the time they acted," *id.* at 85, and it emphasized "the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of . . . executing search warrants," *id.* at 87.

Garrison's focus on reasonableness is emblematic of the Supreme Court's general approach to the Fourth Amendment. For example, in *Davis v. United States*, the Court held that "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." 564 U.S. 229, 241 (2011). In another context, the Court affirmed the denial of a motion to suppress evidence seized during an arrest, where the arresting "officer reasonably believe[d] there [wa]s an outstanding arrest warrant" even though "that belief turn[ed] out to be wrong because of a negligent bookkeeping error." *Herring*, 555 U.S. at 137. This emphasis on reasonableness is longstanding and rooted in the language of the Fourth Amendment, which prohibits *unreasonable* searches and seizures. *See Leon*, 468 U.S. at 918-19 ("We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.").

Applying these principles, we find that the officers' interpretation of the warrant was not unreasonable, even assuming it was mistaken. Although there was some evidence that the RV was being used as a temporary residence, the officers observed the following facts supporting their conclusion that it was a vehicle: (1) the RV had fully inflated tires, could have been mobile within 30 minutes, and was

parked on a driveway with ready access to a roadway; (2) the truck used to tow the RV was parked next to it; (3) the RV, which was parked at a Pennsylvania residence, had Missouri license plates, had a vehicle identification number, and was registered in Missouri; and (4) the RV was not attached to the ground or permanently affixed to any structure.[1]  Further, given that "vehicle" is commonly defined as "[a]n instrument of transportation or conveyance," *see Vehicle*, Black's Law Dictionary, it was reasonable for the officers to treat it as such.  Thus, under these circumstances, we conclude that it was not objectively unreasonable for the officers to believe that the RV was a vehicle within the scope of the warrant.  *See United States v. Patterson*, 278 F.3d 315, 318 (4th Cir. 2002) (applying *Garrison* and upholding the search of a gravel area because, although ultimately incorrect, law enforcement "held an objectively reasonable belief that the gravel area in front of that property was part of the premises encompassed within their warrant").  Therefore, there is no basis for excluding the challenged evidence here.  *See Leon*, 468 U.S. at 918-19 ("[E]ven assuming that the [exclusionary] rule effectively deters some police misconduct and provides incentives for the law enforcement profession as a whole to conduct itself in accord with the Fourth Amendment, it cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity.").

## III.

Accordingly, we reverse the district court's grant of the motion to suppress.

_____

[1]We are not persuaded that the inclusion of the RV as a specific place to be searched in the second warrant disproved the officers' asserted belief that the RV was a vehicle *at the time they executed the original search warrant*.  The initial search and accompanying interviews provided officers with new information that indicated both the existence of data-storage devices and their probable location inside the RV.  Thus, it is not surprising that Kreider included these details in his second warrant application or that he focused on the RV.