# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 19-1002

———————————————

United States of America,

*Plaintiff - Appellee,*

v.

Dennis M. Suellentrop, Jr.,

*Defendant - Appellant.*

——————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————————

Submitted: September 27, 2019
Filed: March 26, 2020

——————————

Before LOKEN, COLLOTON, and KOBES, Circuit Judges.

——————————

COLLOTON, Circuit Judge.

Dennis Suellentrop, Jr., pleaded guilty to seven counts of production of child pornography and one count of possession of child pornography. He reserved the right to appeal an order of the district court[1] denying his motion to suppress images and

———————————————————

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable John

videos retrieved from his cellular telephone. We conclude that law enforcement officers did not violate Suellentrop's rights under the Fourth Amendment, and we therefore affirm the judgment.

I.

In late 2016, Dennis Suellentrop lived in a house owned by his parents with his girlfriend, their infant daughter "Baby M," and a mutual friend named Matt. An acquaintance, Paul Donnelly, resided in a camper parked in the driveway. Donnelly testified that he freely accessed the home, and that Suellentrop occasionally allowed Donnelly to use Suellentrop's cell phone.

On the morning of January 1, 2017, Donnelly entered the house while Suellentrop was inside sleeping alone. After knocking on Suellentrop's bedroom door, Donnelly entered, removed the phone from its charger, and left the room with it. He used the phone to make a call and check Facebook. Donnelly then got "nosey" and looked through the contents of the phone. He observed pornographic images and videos depicting Baby M.

Donnelly attempted to call Baby M's mother, reached Matt instead, and told Matt what he had found. Matt informed Baby M's mother and then visited Suellentrop's property that afternoon. Donnelly showed Matt a few images on Suellentrop's phone.

Donnelly's telephone call to Matt apparently prompted someone to notify law enforcement. Deputy Sheriff Dennis Roberts arrived on the property not long after Matt's arrival. Donnelly walked up to Roberts, recounted what he had found, and handed the phone to Roberts. After seeing an image of child pornography, Roberts

---

M. Bodenhausen, United States Magistrate Judge.

turned off the phone and secured it in his pocket without examining it further. Donnelly let officers into the house; they awakened Suellentrop and escorted him to a patrol car for an interview. Suellentrop waived his right to remain silent and spoke to police. He refused permission to search the house or the phone, but admitted that there was possibly methamphetamine and related paraphernalia in the home.

Detective Scott Poe arrived on the scene a few minutes later and took possession of the phone without turning it on. He then called a state prosecutor, informed him that investigators had seized the phone, and requested assistance with obtaining a warrant to search Suellentrop's residence and the cell phone. The prosecutor eventually signed off on a warrant application and submitted it to a state judge. The judge issued a search warrant.

When officers searched Suellentrop's residence, they found drug paraphernalia but did not locate more evidence of child pornography. Poe completed an inventory of evidence seized from the residence. He enumerated several drug-related items; on a line set apart from the rest, Poe listed Suellentrop's cell phone: "One LG Brand Phone provided by Reporting Party upon initial arrival." Several weeks later, a member of Poe's investigative task force conducted a forensic examination of the phone and found more images and videos containing child pornography.

Federal investigators joined the case shortly thereafter. A special agent of the FBI determined that federal agents should conduct their own examination of Suellentrop's cell phone, and he secured a separate federal search warrant for the phone.

A federal grand jury eventually charged Suellentrop with seven counts of production of child pornography and one count of possession of child pornography. Suellentrop moved to suppress evidence obtained from his phone on the ground that the searches violated his rights under the Fourth Amendment. After an evidentiary

hearing, a magistrate judge recommended denial of the motion, and the district court adopted the recommendation. The court reasoned that some information from the cell phone was the product of a private search by Donnelly that did not implicate the Fourth Amendment. The court further concluded that evidence seized from the cell phone based on the warrants should not be suppressed because state investigators acted in good-faith reliance on a valid state search warrant, and the federal warrant was an independent source for obtaining the cell phone evidence.

Suellentrop entered a conditional guilty plea to all charges, and the district court imposed a sentence of 120 years in prison. Suellentrop appeals the denial of his motion to suppress. We review any factual findings for clear error and the district court's legal determinations *de novo*. *United States v. Guzman*, 507 F.3d 681, 684 (8th Cir. 2007).

## II.

The Fourth Amendment's guarantee against unreasonable searches extends to data on a person's private cellular telephone. *Riley v. California,* 573 U.S. 373, 386 (2014). Suellentrop asserts that all of the evidence from his cell phone should be suppressed because neither Donnelly's actions nor the search warrants justified the government's use of evidence obtained from his phone.

The district court determined that there were several overlapping bases for admitting the evidence obtained from Suellentrop's phone. The private search by Donnelly allowed for use of a small number of images; good-faith reliance on the state search warrant allowed use of everything found on the phone; and the federal search warrant independently justified use of everything obtained from the phone, even if reliance on the state warrant did not. We conclude that Donnelly's private search and the state warrant are sufficient to resolve the appeal.

"The Fourth Amendment . . . does not extend to private searches that are neither instigated by nor performed on behalf of a governmental entity." *United States v. Starr*, 533 F.3d 985, 994 (8th Cir. 2008); *see United States v. Jacobsen*, 466 U.S. 109, 115 (1984). "When the government re-examines materials following a private search, the government may intrude on an individual's privacy expectations without violating the Fourth Amendment, provided the government intrusion goes no further than the private search." *Starr*, 533 F.3d at 995.

In this case, the district court found that Donnelly "acted entirely on his own when he searched Suellentrop's cell phone the morning of January 1, 2017." Suellentrop does not dispute this finding, and it is not clearly erroneous. Donnelly had not even contacted law enforcement when he first viewed the images, so there is no basis to find that he acted at the government's request or even with the knowledge and acquiescence of government agents. *See United States v. Highbull*, 894 F.3d 988, 992 (8th Cir. 2018).

Suellentrop argues, however, that Donnelly's subsequent actions in unlocking the phone and showing an image to Deputy Roberts at the scene were undertaken "as an agent of the government." The character of this second viewing is immaterial. Donnelly's private search already had occurred, and the Fourth Amendment does not forbid the government to reexamine the same materials as long as agents go no further than the private search. *Starr*, 533 F.3d at 995; *United States v. Miller*, 152 F.3d 813, 815 (8th Cir. 1998). At a minimum, therefore, the district court correctly determined that investigators and prosecutors were permitted to use the images and video from Suellentrop's phone that Donnelly viewed on his own initiative.

As for the remainder of the materials found on the phone, we conclude that the state investigators reasonably understood the state warrant to authorize a search of Suellentrop's phone. The warrant authorized investigators to search for "DVDs, CDs, video cassettes, mass storage devices (i.e., hard drives, computers, jump drives, etc)

and photographs of victim(s)" at Suellentrop's residence. Investigators also were directed "to search the computers, cameras, storage devices, and electronic devices seized by you, including any files that are password-protected or encrypted," for evidence of child pornography.

The dispute over the state warrant arises from the fact that investigators obtained Suellentrop's phone from Donnelly at the residence before the warrant was issued. Poe testified that even though Suellentrop's phone was already in police custody, he thought one purpose of securing the warrant was to search the phone. Poe said that he discussed this purpose with the state prosecutor; based on their conversation, Poe believed that the warrant authorized a search of the phone. When Poe prepared an inventory of items seized during the search, he listed Suellentrop's phone: "One LG Brand Phone provided by Reporting Party upon initial arrival." He further testified that if the prosecutor had informed him that the search warrant did not cover the phone, then he "would have simply applied for another search warrant, specifically for just the phone itself."

Suellentrop argues that the search of the phone was unlawful because it was beyond the scope of the warrant. Under the Constitution, however, the question is whether the officers *reasonably believed* that the warrant authorized the search, even if their interpretation was mistaken. *United States v. Houck*, 888 F.3d 957, 961 (8th Cir. 2018). The Fourth Amendment allows for some "honest mistakes" that are made by officers in the process of executing search warrants. *Maryland v. Garrison*, 480 U.S. 79, 87 (1987).

Given the circumstances, we conclude that it was not unreasonable for investigators to believe that the state warrant authorized the search of Suellentrop's phone, along with other electronic devices that might be found at Suellentrop's residence. The warrant is not a model of clarity. It refers to the fact that the officer's application said "the following property, [*sic*: including] outbuildings located on the

property, may contain articles, materials, or substances, that constitute evidence of criminal activity" in violation of the Missouri child pornography statute. Those "articles" were defined to include "mass storage devices (i.e. hard drives, computers, jump drives, etc)." The warrant then says that there is probable cause to believe that evidence of drug trafficking is "presently located at the location known and numbered as 2566 East Rock Creek Road, Arnold Missouri."

In a following paragraph, the warrant directs officers to search "the said premises above described" and to seize any of the specified property that is "found on said premises." Then, in a separate sentence, the warrant commands investigators "to search the computers, cameras, storage devices, and electronic devices seized by you" for evidence of child pornography.

Although the better reading of this warrant may be that officers were authorized to search Suellentrop's residence for mass storage devices, seize any such devices, and then search *only those* devices, it was not unreasonable under all of the circumstances for investigators to believe that the warrant also authorized a search of the cell phone. The warrant authorized investigators to search "electronic devices seized by you," and Suellentrop's phone was such a device—seized on the same day at the same residence. That sentence, read in context, seems to refer to devices seized after the warrant was issued. But the sentence standing alone was not so limited, and Poe received legal advice from the prosecuting attorney that the warrant would encompass Suellentrop's phone. Investigators are not expected to be experts at textual analysis, and we have said that "[s]eeking the advice of an attorney can be factored in to determine if an officer's conduct is objectively reasonable." *United States v. Johnson*, 78 F.3d 1258, 1264 (8th Cir. 1996). While Poe did not personally conduct the search of the phone, the collective knowledge of the cooperating investigators may be considered in determining whether their actions were reasonable. *Cf. United States v. Mosley*, 878 F.3d 246, 254 (8th Cir. 2017). Insofar as the warrant's authority to search, read literally, was limited to evidence seized after

the warrant was issued, and investigators should have sought a separate warrant to conduct a forensic examination of Suellentrop's phone, we conclude that the search was nonetheless among the objectively reasonable honest mistakes that the Fourth Amendment tolerates.

Suellentrop argues that Poe did not act in good faith because he did not rely on the warrant at all. He maintains that Poe intentionally omitted the cell phone from the items to be searched under the warrant, because Poe erroneously believed that he could search the phone incident to Suellentrop's arrest without a warrant. The district court, however, credited Poe's testimony that one reason he sought the warrant was to search Suellentrop's phone, and that he believed the warrant provided authority to do so. This testimony was corroborated by the fact that Poe listed the cell phone on the search warrant inventory as a seized item well before investigators searched the phone. The district court's finding on this point was not clearly erroneous.

*　　*　　*

The judgment of the district court is affirmed.

_____