United States Court of Appeals

For the Eighth Circuit

_____

No. 21-2705
_____

United States of America

*Plaintiff - Appellee*

v.

Keith Allen Shrum

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern
_____

Submitted: September 23, 2022
Filed: February 9, 2023
_____

Before SMITH, Chief Judge, KELLY and GRASZ, Circuit Judges.
_____

KELLY, Circuit Judge.

Keith Allen Shrum entered conditional pleas of guilty to two child pornography-related charges. On appeal, Shrum challenges the district court's[1]

---

[1]The Honorable John A. Jarvey, then Chief Judge, United States District Court for the Southern District of Iowa, now retired.

denial of his motion to suppress. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

On August 24, 2019, Shrum was on a camping trip near Davenport, Iowa, with his then 12-year-old stepdaughter A.B. and some of her friends. Late that night, A.B.'s friends looked at A.B.'s phone and saw text messages between A.B. and Shrum. The texts suggested that Shrum had engaged in sexual activity with A.B. on the trip and had also solicited A.B. for additional sexual contact. The friends took photos of the messages and alerted their parents. A.B.'s mother eventually saw the photos and called the police at approximately 2:00 a.m. on August 25.

Later that morning, at around 10:00 a.m., Sergeant Geoffrey Peiffer of the Davenport Police Department's Special Victims Unit received a call from Stephanie Thurston, a child protection worker. Thurston and other Davenport police officers had been trying to find A.B. overnight, but to no avail, and she was seeking Peiffer's help. Peiffer and Thurston met shortly before noon to discuss what to do next, and Thurston showed Peiffer the text messages between Shrum and A.B.

After the meeting, Peiffer went to Shrum's house on Zenith Avenue but did not see Shrum's car in the driveway. As he drove around the area looking for the campsite, Peiffer also sought and obtained an emergency ping for Shrum's cell phone. When Peiffer received the ping location, it showed the phone was at Shrum's home.

Peiffer returned to Zenith Avenue, where he saw Shrum unloading his car in the driveway. Peiffer requested assistance from uniformed officers and watched the house as he waited. When the officers arrived, Peiffer and Thurston approached the house. As they did, A.B. walked out the front door. Peiffer noticed that A.B.'s hair was wet, and when Peiffer pulled her aside to talk, she told him she had just gotten out of the shower. That seemed unusual to Peiffer, as the car had not even been

unloaded from the camping trip. Given the nature of the text messages between A.B. and Shrum, Peiffer was concerned that she may have showered to destroy physical evidence of sexual activity.

According to Peiffer, A.B. was very hesitant to talk to him. She denied the existence of any improper texts or activity with Shrum, and she said she did not want to get her "dad in trouble." A.B. handed her cell phone to Peiffer and gave him the password. Peiffer looked through A.B.'s phone and saw that the text message thread between her and Shrum had been deleted.

By this time, Shrum was outside of the house, monitored by the other officers. Peiffer approached him and asked if he knew why law enforcement was there. Shrum responded that he had a "rough idea," and that he had been contacted about allegations of "touching" the night before. Peiffer told Shrum he needed Shrum's cell phone. Shrum said it was inside the house and he would go get it. When Peiffer told Shrum he would have to follow him, Shrum did not object and the two walked into the house together.

Shrum's phone was an Android device. Peiffer knew the police department had technology to retrieve deleted data from Android phones but could do so only if the phone remained physically intact. So Peiffer allowed Shrum to hold onto his phone but remained close by to prevent Shrum from damaging or destroying the phone. After Shrum showed Peiffer around the house, they went outside, where Shrum gave Peiffer the password for his phone. Peiffer took the phone, gave Shrum a receipt, and told him it would not be searched without a warrant. Officers obtained a search warrant the following day on August 26, searched the phone's contents, and found about 260 sexually provocative images of a young girl believed to be A.B.

Based on these images, officers obtained a search warrant for Shrum's house. This warrant authorized seizure of specific items of clothing, bedding, a sex toy, cigarettes, a lime green Sharpie, indicia of occupancy of the premises, photographs of the residence, and "[a]ny and all other evidence related to a sexual

abuse/exploitation investigation." The supporting affidavit explained that officers had found sexually explicit images of A.B. on Shrum's phone and that they sought items that were seen in the background of those images. On August 29, 2019, as officers were executing the warrant, Shrum was being interviewed at the police station by Detective Sean Johnson. After he was <u>Mirandized</u>, Shrum admitted that he had child pornography on a hard drive on his bed at home. Johnson called the officers executing the search warrant at Shrum's house and told them to seize the hard drive, which they did.[2] Law enforcement later obtained a separate warrant to search the hard drive.

Shrum was indicted on separate counts of producing, receiving, and possessing child pornography. He moved to suppress all evidence obtained after the warrantless seizure of his cell phone, including the images found on the phone; the evidence seized at his house; and the images found on the hard drive. Shrum also moved to suppress the statements he made to law enforcement. The district court denied Shrum's motion in its entirety. Shrum entered conditional guilty pleas to one count of producing child pornography, 18 U.S.C. § 2251(a), (e), and one count of receiving child pornography, 18 U.S.C. § 2252(a)(2), (b)(1), and was sentenced to 210 months of imprisonment. Shrum timely appeals the denial of his motion to suppress.

II.

Shrum first argues that his cell phone was seized in violation of the Fourth Amendment and therefore the district court erred in denying his motion to suppress. On appeal, "we review the district court's findings of fact for clear error and its legal conclusions de novo." <u>United States v. Stegall</u>, 850 F.3d 981, 983–84 (8th Cir. 2017).

---

[2]The executing officers also seized a computer tower and another external hard drive.

"The warrantless seizure of property is per se unreasonable unless it falls within a well-defined exception to the warrant requirement." United States v. Mays, 993 F.3d 607, 614 (8th Cir. 2021) (citation omitted) (the Fourth Amendment prohibits "unreasonable seizures"). One such exception applies when officers have probable cause to seize the property and exigent circumstances require immediate seizure. Id. Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. (cleaned up). And exigent circumstances exist when officers, for instance, sufficiently demonstrate that "somebody . . . will imminently destroy evidence." United States v. Ramirez, 676 F.3d 755, 760 (8th Cir. 2012) (law enforcement "bear[s] a heavy burden" of demonstrating the need for a warrantless seizure (quoting Welsh v. Wisconsin, 466 U.S. 740, 749 (1984)). "The existence of exigent circumstances is an objective analysis focusing on what a reasonable, experienced police officer would believe." United States v. Williams, 431 F.3d 1115, 1118 (8th Cir. 2005) (cleaned up) (quoting United States v. Kuenstler, 325 F.3d 1015, 1021 (8th Cir. 2003)).

The officers had probable cause to believe Shrum's phone contained contraband or evidence of a crime. Peiffer had seen photos of text messages between A.B. and Shrum that indicated they had engaged in sexual activity, perhaps as recently as on the camping trip the night before. There was a fair probability that those text messages, or related evidence of unlawful conduct, would be found on Shrum's phone.

Exigent circumstances were also present. After A.B.'s mother called the police, officers searched for A.B., without success. When Peiffer did find A.B., it appeared that she had just showered, suggesting to Peiffer that she may have washed away physical evidence of sexual contact. Peiffer also knew that the text message thread between Shrum and A.B. had already been deleted from A.B.'s phone and that A.B. expressed concern about getting Shrum "in trouble." Shrum himself admitted to Peiffer that he was made aware of allegations of "touching" the night before. And Shrum was with A.B. *after* he learned of the allegations and in the hours leading up to the officers' arrival. Given these circumstances, an experienced officer

would have reason to be concerned that Shrum might try to destroy other evidence. Of course, the fact that evidence is stored on an electronic device does not itself constitute exigent circumstances. But here, based on the facts found by the district court, exigent circumstances justified Peiffer's seizure of the phone pending the issuance of a warrant. See, e.g., United States v. Stephen, 984 F.3d 625, 631 (8th Cir. 2021) (determining that exigent circumstances justified the warrantless seizure of a USB because the defendant was actively searching for it and without immediate seizure, officers risked losing the evidence). The district court did not err in denying Shrum's motion to suppress evidence seized from his cell phone.[3]

III.

Shrum also challenges the particularity and scope of the warrant that officers relied on to seize the hard drive from his house.

The Fourth Amendment mandates that "no Warrants shall issue . . . [unless] particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. We review de novo whether a warrant satisfies the particularity requirement. United States v. Campbell, 6 F.4th 764, 770 (8th Cir. 2014). The particularity requirement prohibits officers "from conducting general, exploratory rummaging of a person's belongings," United States v. Sigillito, 759 F.3d 913, 923 (8th Cir. 2014) (cleaned up) (quoting United States v. Saunders, 957 F.2d 1488, 1491 (8th Cir. 1992)), and demands that the warrant be "sufficiently definite to enable the searching officers to identify the property authorized to be seized," id. (quoting United States v. Summage, 481 F.3d 1075, 1079 (8th Cir. 2007)). "Whether a warrant fails the particularity requirement cannot be decided in a vacuum," and we must consider "the total circumstances surrounding the case." United States v. Fiorito, 640 F.3d 338, 346 (8th Cir. 2011) (cleaned up) (quoting Milliman v. Minnesota, 774 F.2d 247, 250 (8th Cir. 1985)). The particularity

---

[3]Because we conclude that the seizure of Shrum's phone was lawful, we need not address Shrum's argument that any statements he made after the seizure must be suppressed as fruit of the poisonous tree.

requirement is "one of practical accuracy rather than of hypertechnicality." <u>Sigillito</u>, 759 F.3d at 923 (cleaned up) (quoting <u>United States v. Peters</u>, 92 F.3d 768, 769–70 (8th Cir. 1996)).  A warrant affidavit may provide the necessary particularity if it is attached to the warrant.  <u>United States v. Nieman</u>, 520 F.3d 834, 839 (8th Cir. 2008).

The search warrant for Shrum's residence listed specific items to be seized, such as articles of clothing and bedding, and "[a]ny and all other evidence related to a sexual abuse/exploitation investigation."  Shrum focuses on the last, catch-all category of evidence to be seized.  He points out that this category is more broadly written than the other categories, which identify specific pieces of evidence.  But the last category is limited by the phrase "related to a sexual abuse/exploitation investigation," and the supporting affidavit described the specific nature of the investigation at issue.  The affidavit explained that officers had found sexually explicit images of A.B. on Shrum's phone and that the intent of the warrant was to seize evidence related to those images.  The catch-all category could have been more artfully drafted with greater particularity, but the standard of "practical accuracy" was met here.  <u>See</u> <u>Sigillito</u>, 759 F.3d at 923 (quoting <u>Peters</u>, 92 F.3d at 769–70).  In light of the facts and circumstances of the investigation, the warrant was sufficiently particular, placing a specific limitation on the search and enabling officers to identify what property was to be seized.  <u>See</u> <u>Nieman</u>, 520 F.3d at 839 (holding that a warrant, which allowed seizure of "evidence of the illegal possession . . . or delivery of controlled substances," was sufficiently particular); <u>United States v. Lowe</u>, 50 F.3d 604, 607 (8th Cir. 1995) (determining that a warrant authorizing seizure of "[a]ddress books, photographs, and other items that tend to show co-defendants or co-conspirators" was sufficiently particular).

Shrum also argues that even if the warrant was sufficiently particular, the seizure of the hard drive from his residence exceeded the warrant's scope because the warrant did not specifically include electronics.  Even if we assume that the hard drive was outside the scope of the warrant, we conclude that the officers acted in good faith when they seized it.

"The Fourth Amendment allows for some 'honest mistakes' that are made by officers in the process of executing search warrants." United States v. Suellentrop, 953 F.3d 1047, 1050 (8th Cir. 2020) (quoting Maryland v. Garrison, 480 U.S. 79, 87 (1987)). The Leon good-faith exception to the exclusionary rule therefore allows the admission of evidence obtained by officers who "*reasonably believed* that the warrant authorized the search, even if their interpretation was mistaken." Id. When assessing whether an officer relied in good faith on a warrant, we "consider the totality of the circumstances, including what the officer knew but did not include in [an] affidavit." United States v. Farlee, 757 F.3d 810, 819 (8th Cir. 2014).

As noted, the warrant authorized the seizure of "certain property" described in a list of eight categories. The first seven identified specific property. The eighth category was a catch-all: "Any and all other evidence related to a sexual abuse/exploitation investigation." The supporting affidavit described that a search of Shrum's phone had revealed sexually explicit images of A.B., and the officers executing the warrant learned that Shrum admitted to having child pornography on his hard drive.[4] We have found that there "is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography." United States v. Colbert, 605 F.3d 573, 578 (8th Cir. 2010). Thus, while it was likely mistaken, it was not unreasonable under these circumstances for the officers to believe that the hard drive was evidence within the scope of the warrant. See United States v. Houck, 888 F.3d 957, 958 (8th Cir. 2018) (determining that "officers were not objectively unreasonable in their belief that [an] RV fell within the warrant's authorization to search 'any vehicles'"); Suellentrop, 953 F.3d at 1051 (concluding that even though a cell phone was not listed in the warrant as property officers were authorized to search, searching the cell phone was "among the objectively reasonable honest mistakes that the Fourth Amendment tolerates"). Given the totality of the circumstances, we agree with the district court that the good-faith exception applies.

---

[4]Shrum does not argue on appeal that the phone call from Officer Johnson to the executing officers must be excluded from our good-faith analysis.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

_____