# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1926
_____

United States of America

*Plaintiff - Appellee*

v.

Rayford Evans

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau
_____

Submitted: April 16, 2026
Filed: June 9, 2026
_____

Before SMITH, BENTON, and ERICKSON, Circuit Judges.
_____

BENTON, Circuit Judge.

The district court[1] convicted Rayford Evans of attempted sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a). On appeal, he challenges the denial of his motion to suppress and the sufficiency of the evidence. Having jurisdiction under 18 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

## I.

On November 16, 2022, E.R. (age 15) stayed overnight at G.T.'s home (age 16), where she lived with six family members, including her uncle Evans.

The next morning while G.T. was sleeping, Evans entered her bedroom while E.R. was awake there. He looked at them and left without speaking. E.R. went to the bathroom to bathe. Rinsing her hair, she saw a cell phone through a transom window above the bathroom door, which was quickly pulled away. She heard footsteps and a door closing.

E.R. dressed and returned to G.T.'s bedroom. On her phone, she wrote: "someone was recording me taking a bath" and "I think it was Ray." She showed the note to G.T. They went outside. There, they called Ancel Teal, G.T.'s father, who was at the grocery store. They described what E.R. had seen and heard.

Arriving home, Teal arranged for E.R. to meet her parents at a nearby gas station. There, Teal told E.R.'s parents about the incident.

Leaving the gas station, E.R.'s father—also a sheriff's deputy—contacted the Doniphan Police Department. He told Officer Brandon Smith that his daughter at a friend's house was recorded in the bathroom. He gave Teal's contact information. Officer Smith called Teal, who told him that E.R.'s description of the phone matched Evans's. Teal said Evans had a second phone and already knew he had been accused of recording E.R.

Smith called E.R's father for a description of the phone used to record her. E.R., near her father at the time, said it was black with three camera lenses.

At 5:15 p.m., Smith—the only officer on duty—went to G.T.'s home. He wore a body camera, which recorded the interaction. Evans answered the door.

Smith told Evans he received a report that he was recording a minor in the bathroom. Evans denied it.

Smith said he needed to take Evans's phones. Evans responded: "not without a warrant." Smith replied: "Yes sir, absolutely, or you can go to jail for, uh, obstruction, okay?" Evans said, "Hm." Smith told Evans he needed to ensure nothing was erased and could seize the phones without a warrant. Evans agreed to give them to Smith.

Smith told Evans to enter the home and return with the phones. Three minutes later, Evans returned with (only) one phone. Smith asked to come inside. Evans agreed. They went to his bedroom. Evans searched for the second phone. After four minutes, Smith told him to stop searching, stating the phone provided was sufficient because it was his primary phone.

After getting a consent-to-search form from his car, Smith reentered the home. He told Evans that signing it would authorize a search of the phone. Evans reviewed and signed it, which stated: "You may refuse to consent to a search, and may demand that a search warrant be obtained prior to any search." He gave Smith the phone's passcode. He requested that Smith search the phone there, which Smith did not do.

At the Police Department, unlocking the phone, Smith found videos of E.R. in the "trash" folder. They showed E.R. nude in the bathroom before and during her bath.

Smith obtained a search warrant for "any other devices" in the home and, with two officers, executed it. They seized "multiple devices," including Evans's second phone, which had been "factory reset."[2] Evans told departing officers that one computer tower had child pornography, but none was found. Evans was charged

---

[2]Explained at trial to mean that all user-input information had been deleted from the device.

with attempted sexual exploitation of a minor. He moved to suppress the evidence from the warrantless search of his cell phone. The district court denied the motion.

At trial, the government introduced five videos recovered from Evans's phone. A forensic expert testified that the videos showed Evans:

- moving a stepladder from his bedroom to the bathroom door, holding the phone to the transom window, and recording E.R.;
- later stating: "I've got an opportunity again";
- E.R. fully nude during a bath, with the camera zooming in on her breasts and genital area;
- E.R. lifting her head and noticing the phone while bathing;
- Evans returning to his bedroom

Evans moved for a judgment of acquittal, which was denied. The district court convicted him. He renewed his motion and moved for a new trial, which was denied. The district court sentenced him to 252 months in prison. Evans appeals.

II.

Evans argues: (1) he did not voluntarily consent to the seizure of his phone; (2) his subsequent consent to search the phone did not purge the taint of the allegedly unlawful seizure; and (3) neither exigent circumstances nor the inevitable discovery doctrine applies. "When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its Fourth Amendment determination *de novo*." **United States v. Ralston**, 88 F.4th 776, 778 (8th Cir. 2023).

"Warrantless searches 'are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" **Watson v. Boyd**, 119 F.4th 539, 559 (8th Cir. 2024), *quoting* **Arizona v. Gant**, 556 U.S. 332, 338 (2009). These exceptions include consent and exigent circumstances. *See*, *e.g.*, **United States v. Uscanga-Ramirez**, 475 F.3d 1024, 1027

-4-

(8th Cir. 2007) ("Consent to search is a valid exception to the warrant requirement if the consent is knowingly and voluntarily given."); *Carpenter v. Gage*, 686 F.3d 644, 648 (8th Cir. 2012), *citing* *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978) ("An exigent circumstances exception to the warrant requirement, however, permits a warrantless entry when the needs of law enforcement are so compelling that a warrantless search is objectively reasonable.") (internal quotation marks omitted).

Consent must be knowing and voluntarily. *See* *United States v. Fleck*, 413 F.3d 883, 891 (8th Cir. 2005). "The question of voluntariness requires a broad factual inquiry; there is no bright-line rule to determine when an 'essentially free and unconstrained choice,' becomes one that is 'the result of duress or coercion.'" *United States v. LeBeau*, 867 F.3d 960, 971 (8th Cir. 2017), *quoting* *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 248 (1973). "Rather, we examine the totality of the circumstances to determine whether consent is knowing and voluntary." *United States v. Harris*, 55 F.4th 575, 581 (8th Cir. 2022).

Relevant factors include: "a defendant's age, intelligence, and education; whether he cooperates with police; his knowledge of his right to refuse consent; and his familiarity with arrests and the legal system." *United States v. Bearden*, 780 F.3d 887, 895 (8th Cir. 2015). "Also relevant is the environment in which consent was given and whether the police threatened, intimidated, punished, or falsely promised something to the defendant; whether the defendant was in custody or under arrest when consent was given and, if so, how long he had been detained; and whether consent occurred in a public or secluded area." *Id.*

Addressing whether Evans voluntarily consented to the seizure of his phone, the district court correctly found that Evans displayed normal intelligence; had some understanding of his rights under the Fourth Amendment; did not appear to be intoxicated; and had a clear understanding of what Officer Smith was saying to him. The court noted the (recorded) interaction occurred on Evans's porch early in the evening, was cordial and respectful, lasted less than two minutes, and that Smith allowed Evans to enter his home unaccompanied before returning with the phone.

-5-

However, the court also acknowledged Smith's statement—that Evans could be arrested for obstruction of justice—made consent a close question.

Relying on *Bumper* and *Escobar*, Evans argues Smith's threat left him no choice but to comply. *See **Bumper v. North Carolina***, 391 U.S. 543, 550 (1968) ("Where there is coercion there cannot be consent."); ***United States v. Escobar***, 389 F.3d 781, 786 (8th Cir. 2004) ("Simply telling a police officer to 'go ahead' with a search is not, in and of itself, proof of voluntary consent.").

To the extent that Evans's consent was involuntary, exigent circumstances justified Smith's seizure of the phone. "The existence of exigent circumstances is an objective analysis focusing on what a reasonable, experienced police officer would believe." ***United States v. Mays***, 993 F.3d 607, 616 (8th Cir. 2021). "[T]he police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." ***Welsh v. Wisconsin***, 466 U.S. 740, 749–50 (1984). "When the exigency at issue is destruction of evidence, police officers must demonstrate a sufficient basis for an officer to believe that somebody in the residence . . . will imminently destroy evidence." ***United States v. Ramirez***, 676 F.3d 755, 760 (8th Cir. 2012). "Not only must the government establish that an exigency existed, but also that there was probable cause." ***United States v. Cisneros-Gutierrez***, 598 F.3d 997, 1004 (8th Cir. 2010). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." ***United States v. Shrum***, 59 F.4th 968, 972 (8th Cir. 2023) (internal quotation marks omitted).

Probable cause is not a high bar. *See **D.C. v. Wesby***, 583 U.S. 48, 57 (2018). The facts known to Smith established a fair probability that evidence of the offense would be found on Evans's phone. Smith received consistent and timely accounts from Teal and E.R.'s father, a trained police officer, identifying the phone used to record her. Teal then confirmed that device matched Evans phone. These statements were made within hours after E.R. reported the recording. Probable cause existed.

Smith had an objectively reasonable belief that if the phone had not been seized, Evans would have destroyed evidence. He knew Evans was aware that he had been accused of recording E.R. on a cellphone, that any videos on it could be easily deleted, and that any delay in obtaining a warrant risked destruction of evidence because no other officer was available to secure Evans or the residence. *United States v. Meyer*, 19 F.4th 1028, 1033 (8th Cir. 2021) (acknowledging that exigent circumstances may justify the warrantless seizure of cell phones where "data can be deleted at the touch of a button"). Exigent circumstances justified the warrantless seizure of the phone.

Because the seizure of Evans's phone was lawful, the subsequent search—authorized by voluntary consent—was not tainted by any prior illegality.[3] The district court properly denied the motion to suppress.

## III.

Evans argues the evidence was insufficient to support the jury's verdict. "We review challenges to the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the verdict." *United States v. Burch*, 113 F.4th 815, 820 (8th Cir. 2024) (internal quotation marks omitted). "We will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

To prove attempted sexual exploitation of a minor, the government had to show that Evans intended to produce a visual depiction of a minor engaged in "sexually explicit conduct"—here, a lascivious exhibition of the genitals, or pubic area—and took a substantial step toward its accomplishment. *See United States v. McCoy*, 108 F.4th 639, 645 (8th Cir. 2024) (en banc) (defining "sexually explicit conduct" to include "lascivious exhibition of the anus, genitals, or pubic area of any

---

[3]Because the seizure was lawful, this court need not address the inevitable discovery doctrine.

person"); ***United States v. Petroske***, 928 F.3d 767, 773 (8th Cir. 2019) ("The elements of attempt are intent to commit the predicate offense and conduct that is a substantial step toward its commission.") (internal quotation marks omitted).

Evans argues the videos show (only) an intent to film E.R. while nude, which is insufficient to support his conviction. *See **United States v. Horn***, 187 F.3d 781, 789 (8th Cir. 1999) (explaining that nudity alone is insufficient to qualify as a "lascivious exhibition"). He believes he did not instruct, encourage or otherwise direct E.R.'s actions; the recordings were not made in a sexually suggestive setting; did not depict E.R. in an unnatural pose; and were filmed from an overhead perspective—all precluding the finding of a lascivious exhibition. *Cf. **McCoy***, 108 F.4th at 642 (finding lascivious exhibition where the minor "followed [the defendant's] instructions and showered in the master bathroom," and the defendant secretly positioned a camera to capture her pubic area); ***Burch***, 113 F.4th at 818 (finding lascivious exhibition where the minor, although clothed, was sitting with "her legs . . . spread apart and, at times, propped up").

Evans ignores that this case was submitted on an attempt theory. The relevant inquiry is whether a reasonable jury could conclude Evans *intended* to capture a lascivious exhibition of E.R.'s pubic area, not whether he succeeded in doing so. *See **United States v. Johnson***, 639 F.3d 433, 439–40 (8th Cir. 2011) ("A defendant's success in attaining his criminal objective is not necessary for an attempt conviction . . . . [E]ven images of children acting innocently can be considered lascivious if they are intended to be sexual."). Evans moved a step stool to the transom window and, three times, returned to the bathroom to position his camera to zoom in on E.R.'s breast and vaginal area, stating he "got an opportunity again." He then reset his second phone, deleting user data, and told officers that one computer tower had child pornography. Viewing the evidence most favorably to the verdict, a reasonable jury could conclude Evans intended to capture a lascivious exhibition of E.R.'s pubic area. *See **Petroske***, 928 F.3d at 770 (affirming conviction of attempted production of child pornography where defendant secretly recorded minors before and after exiting a shower); ***Johnson***, 639 F.3d at 441 (affirming conviction of attempted

exploitation of children where defendant secretly recorded nude minors standing on a scale).

Evans argues that even if intent was proven, the evidence of a substantial step was insufficient. "A substantial step generally exists when a defendant takes actions necessary to the consummation of the crime that were of such a nature that a reasonable observer, viewing the actions in context, could conclude that the actions were undertaken in accordance with a design to commit the actual offense." *United States v. Young*, 613 F.3d 735, 743 (8th Cir. 2010) (cleaned up). By recording the five videos, a reasonable jury could find beyond a reasonable doubt that Evans took a substantial step toward committing the offense. *See Petroske*, 928 F.3d at 770, 773 (holding that a reasonable jury could find beyond a reasonable doubt that defendant took a substantial step toward creating child pornography by recording minor children—"in various states of undress"—in a bathroom).

The district court did not err; there was sufficient evidence to support the verdict.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____